# CHARLESTON.

KENNEDY v. CHESAPEAKE & OHIO RAILWAY COMPANY.

Submitted March 8, 1910.   Decided February 7, 1911.

1. CARRIERS—*Carriage of Passengers—Care Required.*

Though a railway company is not an insurer beyond what the utmost care, human skill, diligence and foresight can provide against, yet the slightest negligence on its part is regarded gross negligence, rendering it liable for injuries sustained by a passenger, in consequence of such negligence.

2. SAME—*Carriage of Passengers—Injury to Passenger—Actions— Pleadings—Variance.*

In actions for personal injuries inflicted by the negligence of a carrier of passengers there is no variance in respect to the specifications of mere matters of detail, concerning the manner or instrumentalities by which the injury is inflicted, if the substantial elements of negligence alleged be proven.

3. SAME—*Carriage of Passengers—Care Required—Assumption of Risk.*

A passenger on a railway carriage does not assume the risks due to the negligence of trainmen in making couplings, though he may have taken passage on a mixed train on a branch line. The duty of the carrier to carry him safely to destination is not limited by the character of the train on which the passenger is invited to travel.

4. APPEAL AND ERROR—*Review—Verdict—Injuries—Measure of Damages.*

Such an action for personal injuries is regarded as one of indeterminate damages, the law giving no specific rule of compensation; and the verdict of the jury, unless evincing passion,

partiality, corruption or prejudice, or that it has been misled by some mistaken view of the case is generally regarded as conclusive.

Error to Circuit Court, Fayette County.

Action by Elizabeth Kennedy against the Chesapeake & Ohio Railway Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Simms, Enslow, Fitzpatrick & Baker,* for plaintiff in error.

*Love & Anderson,* for defendant in error.

MILLER, JUDGE:

Plaintiff sued defendant on account of personal injuries, alleged to have been sustained by her in October, 1906, while a passenger from Powellton to Mt. Carbon. On the trial she recovered a verdict and judgment for $400.00, to which judgment a writ of error was awarded by this Court on petition of the defendant company.

The train on which plaintiff was a passenger consisted of an engine, tender, two coaches for passengers, and three or four freight cars, such, as the evidence shows, was run on the branch line on which the accident occurred. We do not understand counsel for the railway company to contend for a different rule of liability where a passenger is being carried on such a train than when being transported in a better carriage, although the character of the train is emphasized in their brief.

However, counsel rely upon the rule in *Fisher* v. *R. R. Co.,* 39 W. Va. 366, that "a railroad as a carrier of passengers is not an insurer; but its duty is to carry them safely, using the utmost care, as far as human skill, diligence and foresight can reasonably be required to go; but the passenger must not be guilty of contributory negligence." By saying, as this decision does, that a railway company is not an insurer it is not meant to excuse it from the slightest negligence to which an injury to a passenger may properly be referred. While it is not an insurer beyond what the utmost care, human skill, diligence and foresight can provide against, the slightest negligence on its part is regarded as gross negligence. *Mannon* v. *Railway Co.,* 56 W. Va. 554, 556. Citing *Railroad Co.* v. *Horst,* 93 U. S. 291, and other

cases. Carriers of passengers are bound to provide such conveyances as will best secure the safety of passengers. *Farish* v. *Reigle,* 11 Grat. 697; *Baltimore & R. Co.* v. *Wightman,* 29 Grat. 431; *same* v. *Noell,* 32. Grat. 394. Such are the rules of duty and liability controlling this case.

The first point of error in logical order relied on is that there is such a variance between the allegations in the declaration and the proof as to the manner in which plaintiff sustained her alleged injuries, as to preclude her on her own evidence from recovery. The case so far as this question is concerned stands solely on her unsupported testimony. She alleges in her declaration that the train on which she was a passenger sustained a violent shock by coming in collision with other cars of the same train, whereby she "was thrown violently from her seat in said coach across the aisle thereof, striking among and against the seats on the opposite side thereof, and falling heavily to the floor of said car whereby her right arm sustained severe and permanent injuries and was otherwise by reason whereof wounded, bruised, hurt and injured and was lame, sore, sick and disabled for a long space of time."

Her evidence is: "I was sitting there nursing my baby and the engine come back down the creek and struck the car and knocked me back off the seat on the floor and back against the seat and I struck my arms and bruised them, and I struck this part of me (indicating right side) and my lower limbs were bruised until they turned black and blue and I was not able to do my housework for five months." As to the character of her injuries she further says: "I was hurt very bad. My limbs were bruised and my arms, and at night I had to put a pillow under my arms to get a little rest, and it ached and pained so bad, and I could not lift a pail of water for five months, and now my arm is not well and aches and hurts, and I can not raise a pail of water and it hurts me to walk." On cross-examination she states that she was setting on the bench when she fell, and she was asked the question: "Q. You fell forward—right straight forward? A. Yes, sir. Like it knocked me over that way and then I fell back against the seat. Q. When you fell forward tell the jury, whether or not, you went down on your knees? A. Yes, sir. Q. And the engine struck the car again and you went backwards? A. Yes, sir."

It is argued that this evidence shows plaintiff was injured by slipping from the seat to her knees, then falling back against the seat behind her, varying to some extent at least from the manner in which she alleges in her declaration she sustained her injuries. We do not think this variance so material as to preclude recovery. It has been repeatedly held by this Court, in actions of this character, that there is no variance in respect to specification of mere matters of detail, concerning the manner or instrumentalities by which the injury is inflicted, if the substantial elements of negligence alleged be proven. *Stone* v. *Railroad Co.,* 66 W. Va. 417, 421; *Hanley* v. *Railway Co.,* 59 W. Va. 419; *Kniceley* v. *Railroad Co.,* 64 W. Va. 278. Tested by these decisions we see no fatal variance.

Another point made is that it was a physical impossibility for the plaintiff to have sustained her injuries, as she testified on cross-examination, by falling straight forward and then straight back against the seat on which she had been sitting. And as her second child, three years old, lying on the seat asleep beside her, was not disturbed by the shock, so far as her evidence shows, the argument is that to have fallen in the way stated plaintiff would have fallen directly across the line of force, imparted by the engine in making the coupling, an impossibility, they say. We think this point of impossibility too refined. We do think it can be safely said that it was impossible for the plaintiff to have sustained the injuries in the manner or substantially in the manner stated by her. She may not have described accurately the direction of her fall. The way in which she may have been sitting on the seat, and the weight of her child in her arms may have had something to do with the direction of her fall. That she sustained the bruises complained of is not only proven by plaintiff's own testimony, but she is corroborated by the testimony of other witnesses who saw her shortly after she left the train. Evidences of them remained for several weeks afterwards, as shown by the evidence of the physician who then examined her. Whether they were of the serious character claimed and whether in view of the evidence of the trainmen the shock given to the car, by the coupling of the engine, was as forceful as plaintiff describes it, may well be doubted. But these were all facts for jury decision, and we cannot say from all the evidence, that the evidence of the plaintiff is so overborne by that of the defendant

as to warrant us in disturbing the verdict, or to justify us in saying that the court below erred in refusing the peremptory instruction to find for the defendant.

The four instructions given the jury at the instance of the plaintiff are complained of. ' The point made against them particularly is that instructions number two and three entirely ignore the fact that a passenger assumes the risks ordinary to travel, such as the coupling of cars. We do not think the point a good one. Instruction number two merely defines in general the duty of passenger to carrier, and tells the jury that the carrier is responsible for the manner in which it executes that duty. It states a correct proposition of law applicable to cases of this character. The third is of the same general character, and properly tells the jury, that if they find the plaintiff was injured, by reason of the neglect, recklessness or carelessness of defendant's servants, without fault on her part, they should find for her and assess her damages in such an amount as the evidence warrants. No instruction was asked by the defendant, presenting the subject of assumed risks in the coupling of cars. It is doubtful whether any such a question was involved. But whether so or not plaintiff could not be said to have assumed extraordinary risks and hazards due to negligence in making such coupling. The cases relied upon by counsel to support their contention are: *St. Louis* v. *Morrow,* (Tex.) 93 S. W. 162; *Ft. Worth* v. *Rogers,* (Tex.) 60 S. W. 61; and *Texas & P. Ry. Co.* v. *Adams,* (Tex.) 72 S. W. 81. We do not think these cases support them. The first case presented the question whether a passenger who got aboard a train at a junction, before a coupling had been made, and the train was ready to proceed on its journey, assumed the ordinary risks incident to making such a coupling. While the court in that case in charging the jury told them, that if the passenger entered the coach under such circumstances, he thereby assumed the risk of being injured, and by the cars being switched together in such manner as couplings were usually made, yet the court refused an instruction requested by defendant telling the jury, that he thereby assumed the risk, if any, in making such coupling, provided the jolt or collision was only such one as was incident in coupling such cars, and which omitted the word "usual" or "usually", contained in the court's charge to the jury. The other cases relate to the risk

assumed by a passenger who elects to ride on a freight train, when he has the choice of traveling by a passenger train, and the risk of injuries assumed incident to whatever jerking and pushing of the cars may be necessary in handling a freight train. Such cases have little, if any, application to a case like this. While the plaintiff may have had notice that the train she took passage on was a mixed train, it was nevertheless a train provided with coaches for carrying passengers, and the duty and liability of the carrier to carry her safely to destination was in no way limited by the character of the train on which she was invited to take passage.

Another point is that the damages awarded by the jury were more than compensatory, contrary to the rule in *Talbott* v. *Railway Co.,* 42 W. Va. 560. That was not a personal injury case, it was an action for damages for killing a horse. It involved no question of mental and physical pain and suffering, permanent injury, loss of time, and the like, all elements proper to be considered by a jury in a personal injury case. Such a case as this is regarded as one of indeterminate damages, the law giving no specific rule of compensation; and the verdict of the jury is generally conclusive, unless it gives evidence of passion, partiality, corruption or prejudice, or that the jury has been misled by some mistaken view of the case. *Trice* v. *C. & O. Ry. Co.* 40 W. Va. 271; *Goshorn* v. *Foundry Co.,* 65 W. Va. 250; 4 Ency. Dig. Va. & W. Va. Rep. 187, 188 and cases there collated.

Seeing no error in the judgment below, of which this Court can take cognizance, it must be affirmed.          *Affirmed.*