# CHARLESTON.

FETTY, WHO SUES ETC. *v.* HUNTINGTON LOAN CO.

Submitted January 17, 1911.    Decided April 23, 1912.

1. MALICIOUS PROSECUTION—*Liability of Corporation—Acts of Agent.*
   A corporation is liable for a malicious prosecution by its agent, acting within the scope of his employment and in furtherance of his company's business, notwithstanding the company may not have expressly authorized or ratified his act. (p. 689).

2. SAME—*Want of Probable Cause.*
   Points 8, 10 and 16 of the Syllabus, *Vinol* v. *Core*, 18 W. Va. 1, approved and applied. (p. 689).

3. ASSIGNMENTS—*Malicious Prosecution—Wages—Security for Debt.*
   A contract, purporting, to be a sale or transfer of wages due, held to be a collateral security for a loan; and whether it was made with intent to defraud, held to be a question for the jury. (p. 694).

Error to Circuit Court, Cabell County.

Action by Myron Fetty against the Huntington Loan Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Wyatt & Graham* and *C. W. Freeman,* for plaintiff in error.

*Isbell & Perry,* for defendant in error.

WILLIAMS, JUDGE:

This writ of error brings up for review a judgment for $400 rendered against defendant, a corporation, by the circuit court of Cabell county, in an action for malicious prosecution.

F. L. Dootlittle, defendant's secretary, procured the arrest of plaintiff upon a warrant, isued by a justice of the peace, upon affidavit charging him with grand larceny. At the preliminary hearing the justice discharged him, and there was no indictment found against him. It is insisted that, because the arrest was not expressly authorized or ratified by the corporation, it is not liable, that a corporation is not liable for the unauthorized torts of its agents. Courts, for a time, held different views on this question; some holding that corporate action, authorizing or approving the wrongful act, was necessary to fix liability. But some of the courts that held to this view in their earlier decisions, have since overruled them, and have fallen in line with the majority of the courts of the different states. It is now the generally accepted doctrine, that a corporation is liable for the torts of its agents, committed within the scope of his employment, in the same manner that an individual principal is liable, and that no corporate action is necessary. *Goodspeed* v. *East Haddan Bank,* 22 Conn. 530, 58 Am. Dec. 439, decided in 1853, is a leading case on this subject, and has generally been followed by the courts throughout this country. A corporation is liable for a false arrest or malicious prosecution, procured by its agent in furtherance of the company's business, and within the scope of the agent's employment. 10 Cyc. 1216; 5 Thompson on Corp. (2nd ed.) sec. 5447; *Copley* v. *Sewing Machine Co.,* 6 Fed. Cas, No. 3213; *Vance* v. *Railway Co.,* 32 N. J. L. 334; *Wheless* v. *Second National Bank,* 25 Am. Rep. 783; *Railroad Co.* v. *Quigley,* 21 How. (U. S.) 209; *Hussey* v. *Railroad Co.,* 98 N. C. 34, 2 Am. St. Rep. 312.

"A corporation may be held liable for a false imprisonment procured by the wrongful acts of its agents and servants in the course of their employment, although it neither authorized nor ratified such acts." *Wheeler & Wilson Manf. Co.* v. *Boyce,* 36 Kan. 350, 59 Am. Rep. 571.

It is insisted that plaintiff failed to prove either want of probable cause or malice, and that the court erred in overruling

defendant's motion to set aside the verdict and award it a new trial. Want of probable cause is one of the essential grounds of an action for malicious prosecution, and, notwithstanding it is a negative proposition, the burden rests upon plaintiff to prove it. But, in view of its negative character, only slight proof is required. *Vinol* v. *Core,* 18 W. Va. 1; 26 Cyc. 86.

That plaintiff's arrest was procured upon complaint made by defendant's secretary, charging him with a felony, is admitted; and his discharge is proven by the transcript from the justice's docket. No indictment was made by a grand jury. The prosecution had terminated. *Waldron* v. *Sperry,* 53 W. Va. 116, 44 S. E. 283.

Plaintiff's discharge by the justice is *prima facie* evidence of the want of probable cause, but may be rebutted by proof. *Vinol* v. *Core, supra,* (Syl. pt. 16); *Harper* v. *Harper,* 49 W. Va. 661, 39 S. E. 661.

Malice is also a necessary element of the action, which plaintiff must establish. But being a matter of motive and, therefore, difficult to prove by direct evidence, it may be inferred from want of probable cause. *Vinol* v. *Core, supra,* (Syl. pt. 10). Malice is a comprehensive, technical term. It is not confined to personal hatred or ill-will, but comprehends any unlawful motive or purpose; as, for instance, procuring the arrest of a party on a criminal warrant, for the purpose of forcing him to pay a debt, and not for the purpose of punishing him for the crime charged. 26 Cyc. 50.

In the summer of 1906 plaintiff, then a boy between seventeen and eighteen years of age, was employed by the American Car & Foundry Company. He procured loans of small sums of money from defendant by a sale to it of his "time", or wages due him, as follows, viz; on the 11th of August, $11.00; on the 28th of August, $3.50; and on the 8th of September, $14.50. The form of contract which plaintiff was required to sign, and which he did sign, was as follows, viz:

"Huntington, W. Va., September 8, 1906.

"This is to certify that, I, the undersigned, represent to and agree with the Huntington Loan and Surety Co., as follows:

"1st. That I am past 21 years of age.

"2nd. That, for value received, I am indebted to the Hunt-

ington Loan and Surety Co., in the sum of $14.00 Dollars and fifty cents.

"3rd.   That I am employed by the American Car & Foundry Company, a corporation, and that said company is indebted to me in a sum sufficient to repay the Huntington Loan and Surety Co. the above named amount.

"4th.   That I have irrevocably assigned to the Huntington Loan and Surety Co. by extended order, the amount herein before represented to be due or hereafter to become due me by the above named corporation.

"5th.   That no other assignment of said wages have been made nor will be made by me, nor have the same been attached or garnished prior to the above date.

"6th.   That if from any cause an amount exceeding my indebtedness to the Huntington Loan and Surety Co. be paid to them by the above named corporation, it is agreed that said amount shall be refunded to me by them, unless circumstances otherwise prohibit the refunding of the balance.

"7th.   That if the Huntington Loan and Surety Co. is put to any trouble in collecting the above named amount, I hereby agree to pay *yo* said Huntington Loan and Surety Co. a fee not to exceed $10.00 for any act or thing done by them toward the collection of the above named amount, and the fee to be charged shall be optional with said Huntington Loan and Surety Co.

"8th.   That the above sum of money is obtained by me from the Huntington Loan and Surety Co. upon the representations above made by me.

> "Signed.   Myron Fetty.
> "Endorser, ————————
> "Witness, Grace Staley."

Accompanying this, there was also a written power of attorney which plaintiff executed to William Chaffin, authorizing him to settle plaintiff's accounts with the American Car & Foundry Company, and to receipt to it for the money that was due, or that might become due him; also an agreement to pay said Chaffin an attorney's fee not to exceed $15.00, "for any act performed" in plaintiff's behalf.   At the same time orders upon the American Car & Foundry Company were given, as follows, viz:

"Huntington, W. Va., 9/8, 1906.

"To the American Car & Foundry Company, a corporation:

"For value received, I, the undersigned, have bargained, transferred, absolutely sold and conveyed to the Huntington Loan and Surety Co. all moneys due or which may hereafter become due to me, for the period of one year from date. You are therefore directed to pay to their order all moneys due or which may hereafter become due me during said period.

"Signed.    Myron Fetty.

"Signed, ——————————

"Witness, Grace Staley."

Plaintiff testifies that he continued to work for the American Car & Foundry Company until about the 15th of September, 1906, and that within that time he had repaid to defendant company between $6.00 and $7.00 of the money borrowed. Defendant did not notify the American Car & Foundry Company that it held assignments for plaintiff's wages, and did not present any of the orders to it, for acceptance or payment, until the 28th of September, and after it had learned that plaintiff had ceased to work for that company. There was then only two days wages to his credit, for which there was due him $3.00. That was paid to defendant.

Obtaining from another money, by false pretenses, with intent to defraud is made larceny by statute. Sec. 23, ch. 145, Code 1906. And the obtaining of the money in the manner, and by the means above stated, is the ground of the complaint on which plaintiff was arrested.

On the day of the trial before the justice, B. L. Fetty, plaintiff's father, and J. W. Perry, as surety, gave their note to defendant company for $18.50, in settlement of the balance which plaintiff owed to defendant. Defendant's agent must have known, at the time he made complaint before the justice, that plaintiff was not guilty of a felony. Why then did he make the charge as he did? He was both secretary and manager of defendant's business at the time he made the complaint. But are the facts and circumstances sufficient to justify a reasonable belief that plaintiff was guilty of obtaining a less sum than $20.00 by false pretenses and with intent to defraud? This question must be answered from defendant's standpoint. *Porter* v.

*Mack,* 50 W. Va. 581; *Scott* v. *Shelor,* 28 Grat. 891.  What effect would be produced on a reasonable mind by the facts which defendant's agent knew?    If they are such as to induce belief of guilt, then there was probable cause; otherwise not.  *Porter* v. *Mack, supra.*  If the facts are admitted, or if they are proven and not denied, then, whether they are sufficient to show want of probable cause is a question of law.  But if the facts depend upon conflicting testimony, the question is one of mixed law and fact, and must be decided by the jury.  *Vinol* v. *Core, supra,* (Syl. pt. 8).  Therefore, in considering the question, we must regard those facts as proven which tend to show want of probable cause, if there is sufficient testimony to prove them, because the jury's verdict is a finding of such facts.  The error complained of is the refusal of the court  to set aside the verdict.  The jury's finding of facts, depending on conflicting testimony, must have its proper weight with the court.  On this question the character and the language of the contract on which the money was obtained, is important.  It states, in reference to plaintiff's age, that he is 21 years old.  But at that time he was in fact only a little over seventeen.  He testifies at the trial of this case on the 29th of April, 1909, that he would be 20 years old in the following October, and he got the money in August and September, 1906.  Whether his appearance was such as would likely cause another to believe he was 21 years old, or whether the statement in the written contract was made to deceive and did actually deceive defendant's agent, were questions for the jury, and they have, in effect, answered them in the negative.  The contract was according to a printed form which defendant used in its business.  It was not read to plaintiff, and it does not appear that he read it before signing it.  Therefore the jury may have believed that he did not know that he was falsely certifying to his age.

Again, the contract certifies that the American Car & Foundry Company, by whom plaintiff was employed, was indebted to him in a sum sufficient to repay defendant the amount named in the paper.  But, was this statement made for the purpose of deceiving, and did it in fact deceive defendant's agent?    It seems not.  If the defendant regarded the contract as an assignment to it of $14.50 of money which was at that time owing by

the American Car & Foundry Company to plaintiff, and if it relied up the representation that so much money was at that time actually due plaintiff, and was thereby induced to lend him money, why did the very next clause of the contract take an assignment of "moneys thereafter to become due?" And why did the order to the American Car & Foundry Company direct it to pay the defendant all moneys due and thereafter to become due to plaintiff for the period of one year from that date? Another significant fact which tends to show that defendant did not rely upon the representation that plaintiff had enough money to his credit at that time, to repay the money borrowed, is, that defendant did not file any of the orders with the American Car & Foundry Company until the 28th day of September, after it had learned that plaintiff had ceased to work for that company. True, at that time, he had but $3.00 to his credit at the company's office, and that is all that defendant got upon the orders That does not prove that plaintiff made a false representation as to the amount due him, or that defendant would not have gotten its money if it had presented the orders immediately after they were given. Moreover, plaintiff testified that, at the time he gave the orders, he had enough money then due him to repay the loan; and this testimony seems not to be denied. He also testifies that he repaid defendant between $6.00 and $7.00. True the paymaster for the American Car & Foundry Company testified that plaintiff's name did not appear on the company's books after September 1st. But it does not appear what day of the month was pay day, or that the names of the workmen were noted on the records of the company except on pay day. Hence, plaintiff's testimony may be reconciled with that of the paymaster. He may have worked until as late as September 15th, and still his name may not have appeared on the pay roll. But, like other facts in the case, this was a jury question.

On the order for $14.50 plaintiff received $13.00. The order was discounted $1.50, which is equivalent to about two years' interest, at six per centum per annum, or one year's interest at twelve per centum. All the above enumerated facts and circumstances were sufficient to warrant the jury in believing that the representations, as to plaintiff's age, and as to the amount of money due him, set out in the printed form of agreement, were

not made with intent to defraud defendant, and that they did not
in fact deceive its agent. Instead of being intended as a trans-
fer of wages then due, the transaction seems to have been really
designed to operate as a security for a loan of money, to be re-
paid at some future time. Otherwise, there is no explanation
for defendant's delay in presenting the orders to the American
Car & Foundry Company until after it had learned that plain-
tiff had ceased to work for that company. Why he quit work,
does not appear. That he did it to avoid his contract with de-
fendant is certainly not proven. Mr. Doolittle testified that
plaintiff "was to pay before he borrowed again." What does
this mean, if plaintiff was not given the right to draw his wages,
after he had given the assignment. How, otherwise, could he
pay what he had borrowed?

To hold that defendant regarded the contract as an assign-
ment of so much of plaintiff's wages as were then stated to be
due, which gave plaintiff no right thereafter to draw such wages,
would necessarily be to take a very uncharitable view of de-
fendant's business. It would mean that it was exacting usury
to an enormous extent. Why should plaintiff be willing to ac-
cept $13.00 for $14.50 of wages, if that amount of money was
due him from the American Car & Foundry Company, and was
intended to be transferred to defendant immediately? That
the parties so understood the contract is wholly inconsistent
with the subsequent conduct of defendant's agent; at least, until
he caused plaintiff's arrest. The purposes for which defendant
was incorporated do not appear. But that it is in the business
of lending money is suggested by its name, and that it is doing
so for a profit is shown by the facts in this case.

After plaintiff had ceased to work for the American Car &
Foundry Company, he got a job on a saw mill in Logan county.
Defendant says it was a long time before it could ascertain where
he was, and that it was under the belief that he left the county,
and secreted himself, to avoid the payment of its debt. Defend-
ant's agents, F. L. Doolittle and C. C. Curtis, testified that they
made inquiries concerning his whereabouts, and were unable
to locate him for about two years. But they made no inquiry
of plaintiff's family until a short time before plaintiff was ar-
rested, when Curtis first inquired of plaintiff's father and was

told where he was. If they had inquired of the boy's father sooner, they might have located him sooner. His absence from the county was not sufficient to induce belief in a reasonable mind that he had procured the loan fraudulently. It does not appear why he quit work at the American Car & Foundry Company, or why he went to work in Logan county. He may have been discharged by the American Car & Foundry Company, and sought work elsewhere.

It is insisted that defendant is a different corporation from the one that made the loan, and that, therefore, it is not liable. The Huntington Loan and Surety Company was a corporation chartered under the laws of Arizona. But on January 1, 1907, defendant company was chartered under the laws of West Virginia, and took over the business of the old company, including the debt owing by plaintiff. F. L. Doolittle was, successively, secretary and manager for both companies. He testifies that at the time he swore out the warrant for plaintiff's arrest, he was acting for defendant company. Therefore, the act, being performed for this company, and being within the scope of the agent's employment, would certainly make defendant liable, according to the authorities cited in the first part of this opinion. The debt which plaintiff owed the old company, was, at the time plaintiff was arrested, the property of defendant.

The foregoing opinion practically disposes of the assignments relating to the giving of plaintiff's instructions, Nos. 2 and 3, and to the refusal to give defendant's instruction, No. 1, which was a peremptory one to find for the defendant, and the judgment will be affirmed.

*Affirmed.*