# CHARLESTON

LYONS v. DAVY-POCAHONTAS COAL CO.

Submitted February 3, 1915.   Decided March 2, 1915.

1.  MALICIOUS PROSECUTION—*Right of Action—Requisites.*
    To maintain an action for malicious prosecution it is essential to prove (1) that the prosecution was malicious, (2) that it was without reasonable òr probable cause, and (3) that it terminated favorably to plaintiff.   (p. 742).

2.  SAME—*Proof of Malice—Sufficiency.*
    Proof that plaintiff, formerly a tenant of defendant, was arrested on a warrant, charging him with · trespass to property, procured to be issued by the landlord's agent, acting within the scope of his employment, for the sole purpose of getting him off the land, establishes malice.   (p. 742).

3.  CORPORATIONS—*Actions—Declaration—Agency.*
    In a declaration, charging a corporation with a trespass committed by a certain person as its agent, it is not essential to aver the agency.   (p. 743).

4.  MALICIOUS PROSECUTION—*Corporations—Acts of Agents.*
    A coal mining corporation is liable for a malicious prosecution procured to be made by its superintendent acting in furtherance of its business.   (p. 743).

5.  SAME—*Continuation of Prosecution—Malfeasance of Officer.*
    A person who sets on foot a malicious prosecution is liable for its continuance and for the malfeasance of the officer making the arrest.   (p. 744).

6.  CONTRACTS—*Validity—Duress.*
    A person unlawfully imprisoned, who is induced by his prosecutor, or his agent, to sign a writing agreeing not to sue for damages, in order to obtain his liberty, is not bound thereby.   (p. 745).

7. EVIDENCE—*Conclusiveness on Party Introducing—Duress.*

And in an action for malicious prosecution he may prove that he signed such paper under duress, notwithstanding he put it in evidence himself for the purpose of proving a termination of the prosecution.  (p. 745).

Error to Circuit Court, McDowell County.

Action by T. J. Lyons against the Davy-Pocahontas Coal Company and others.  Judgment for defendants, and plaintiff brings error.

*Reversed and rendered.*

*Joseph M. Crockett, and Sanders & Crockett,* for plaintiff in error.

*Strother, Taylor & Taylor,* for defendants in error.

WILLIAMS, JUDGE:

Plaintiff recovered a verdict for $3,500 against Davy-Pocahontas Coal Company and P. A. Grady, in an action for malicious prosecution, and, on motion of defendants, the court set it aside and granted them a new trial.  By this writ of error plaintiff seeks to have that order reversed and judgment entered here upon the verdict.

Defendants offered no evidence.  The case was submitted to the jury upon plaintiff's evidence alone, and instructions, with the result above stated.  The material facts, as they appear from the uncontroverted testimony, are as follows: In November, 1913, plaintiff was in the employ of defendant coal company, as a coal miner, occupying one of its houses. The defendant P. A. Grady, superintendent for the coal company, met plaintiff in Welch on the 18th of December, 1913, and told him that the company wanted the house he was occupying, and asked him when he intended to give it up.  Plaintiff replied he was ready to give it up at any time, and Mr. Grady said they wanted it "right now".  Plaintiff testified that Mr. Grady was angry and said to him, "you and I are going to run together, and we are going to have trouble.  I am going to fix you, and I will fix you proper, too."  About thirty minutes after that conversation plaintiff was arrested upon a warrant issued by A. C. Hufford, justice of the peace,

upon a complaint made by W. A. Burrell, deputy sheriff of McDowell county. Burrell also worked for the Baldwin-Felts Detective Agency. The warrant charged plaintiff with unlawful trespass upon the personal property of the Davy-Pocahontas Coal Company, and was directed to F. E. Miller, another deputy sheriff of McDowell county. Miller and Burrell arrested plaintiff immediately and instead of taking him before the justice, as the writ commanded, they delivered him over to the keeper of the jail. He was therein confined from the 18th to the 20th of December, 1913, when he was released in the manner hereinafter described. Burrell testified that he did not remember making the complaint, nor where he got the information on which he made it, and admitted that he did not know plaintiff before the day he helped to arrest him. Defendant Grady had gone to justice Hufford's office, a short while before the warrant was issued, and told the justice plaintiff was no account to work, was bothering them and he wanted to get him off his job, and asked the justice to do the best he could to get him off the job, and said that neither he nor the company wanted to be mixed up in it. Mr. Hufford says he then told Grady he would do the best he could and would issue a warrant for the arrest of Lyons for trespassing. Grady then went out, and the justice says he thinks Burrell came in immediately after Grady left, and made the complaint upon which he issued the warrant. No further proceedings were taken before the justice, and plaintiff was never taken before him or any other justice on the warrant, but was released by the jailor on the 20th of December, immediately after he had signed the following paper, viz.: "I, T. J. *Lyon*, for and in consideration of the withdrawal of all charges against me as a trespasser upon the property of the Davy Pocahontas Coal Company near Roderfield, McDowell County, West Virginia, hereby agree to return to said Company at once and remove my family and goods from off of the lands of the said Coal Company at once and not again go upon said property for any purpose, and I further agree and hereby bind myself not to bring any suit by way of damages or otherwise for my arrest on a charge of trespass on said property.

T. J. LYONS.

Dated this the 20th day of Dec. 1913:

Witness

    F. E. Miller

Turned over to W. L. Taylor

May 27th 1914.''

It is not directly proven who prepared that paper, but the jury could properly infer from the testimony of Hufford and Miller that it was prepared by W. L. Taylor, president and attorney of the coal company, acting in its behalf. It was in his possession, and was produced by him at the trial, on request of plaintiff's counsel, who put it in evidence, over defendants' objection. Mr. Taylor does not deny having prepared it, but said he did not know whether he did or not. In speaking of the paper, the justice says: ''I think Mr. Taylor drawed—had him to draw that up—that release; and I called Miller, to the best of my recollection, over to Mr. Taylor's office after that. Then Miller brought it back to me, and then, I suppose Miller went to the jail and had him to sign that, and then Miller brought that back to me the second time—after it was signed.'' Miller swore the paper was given to him at Mr. Hufford's office, that he took it to the plaintiff in jail, and, after plaintiff signed it, he returned it to Mr. Hufford. Describing the manner in which he obtained plaintiff's signature, witness said he laid the paper on the jailor's desk before plaintiff, and said: ''There is a paper that you can read over. If you care to sign it I will release you— that the plaintiffs don't care to bring any charges further against you, or anything of that kind. That is all he wants, is to get you off the property. He read it over. He said, 'I have a lawyer'—I said, 'I have got to catch this train; I haven't got time—So you can do as you like about signing it,' I said; 'If you want to sign it, I will release you'. So he said, 'All right'; and he signed the paper in the presence of Mr. Collins (the jailor) and myself. So we turned him loose, and I asked him to get off this property that he had been trespassing upon. He had been ordered to get off, so I understood.''

In order to maintain his action it was essential for plaintiff to prove, (1) that his prosecution was malicious, that is, that

it was instituted for some unlawful and improper purpose, and not for the purpose of punishing him for a crime; (2) that it was without reasonable or probable cause; and (3) that it had terminated favorably to the accused, either by a judgment of acquittal upon the merits, failure of the grand jury to find an indictment, or abandonment by the prosecutor. 26 Cyc. 58. The jury could find from the evidence, as they unquestionably did in order to reach a general verdict for the plaintiff, that the foregoing essentials were proven. According to the evidence, the sole purpose of the criminal writ was to get plaintiff out of possession of the property he was occupying under lease from the coal company. That constituted legal malice. Nor is there the slightest evidence of the existence of any such facts, as would have led a reasonably prudent person to suspect, much less to believe, that plaintiff had committed a trespass upon the property of the defendant company; and plaintiff's release from jail, and the failure to further prosecute the charge against him, proved a termination of the prosecution by abandonment; unless, as defendants' counsel insist, the writing signed by plaintiff proves that it was compromised, in which event he can not recover. 19 A. & E. E. L. 684; and 26 Cyc. 59. If the termination of a prosecution is by the consent or procurement of the accused, or his discharge is merely technical, or has been improperly obtained, no foundation exists for the action. We will again return to a discussion of the force of the paper.

It is insisted by counsel for the defendant coal company that its demurrer to the declaration should have been sustained, because of the failure to aver that P. A. Grady was its agent. No such averment was necessary. The declaration does aver, "that the said defendants P. A. Grady and the Davy-Pocahontas Coal Company, through its officer, agent, representative and employee, P. A. Grady, conspiring", etc. This was sufficient to inform defendant company that the wrong complained of was committed by it through one of its agents. Being a corporation, it could act only through its agents and officers. The familiar maxim, *qui facit per alium facit per se*, applies. The demurrer was properly overruled.

That Grady was acting for the defendant coal company and within the scope of his employment, in getting plaintiff out

·of its house, is clearly to be inferred from his relation as its general superintendent. It was·he who, acting for the company, gave plaintiff the right to occupy the house in the first instance. Rent .therefor was collected by deducting it from his wages.

That a corporation is liable for a malicious prosecution, ·set on foot by one of its agents, acting within the scope of his ·employment and in furtherance of its business, even though it may not have expressly authorized or ratified the wrong, was decided in *Fetty* v. *Huntington Loan Co.,* 70 W. Va. 688. ·See also *Williamson* v. *Glen Alum Coal Co.,* 72 W. Va. 288, .and *Turk* v. *N. & W. Ry. Co.,* decided at the present term of ·court. The latter cases, while not actions for malicious prose- ·cutions, are authority for the proposition that a corporation is liable for the wrongs committed by its agents within the ·scope of their .employment. ·

Complaint is made that plaintiff was improperly permitted to prove his imprisonment in jail. From the written opinion ·of the trial judge, copied into the brief of counsel, it appears ·that he was of the opinion that he had committed a mistake, prejudical to defendant, in allowing that fact to be proved, and for that reason he set aside the verdict. But we do not ·think the evidence was improper. Evidence of plaintiff's incarceration was only incidental to proving his release, a fact essential· to show the termination of the prosecution. Counsel insist that plaintiff's imprisonment was not a proper element ·of his damage, because it appeared that the officer had violated ·the writ in taking him to jail, instead of taking him before the justice, as he was commanded by the writ; and that defend- ants should not be held liable for the wrongs and mistakes of ·the officer. We do not so understand the law. The parties who set a prosecution on foot, maliciously and without prob- ·able cause, are liable for the damages sustained by the accused, ·even though they may result in part from the malfeasance of the officer. *Williamson* v. *Glen Alum Coal Co., supra;* and *Turk* v. *N. & W. Ry. Co., supra.* In *Johnson* v. *Miller et al.,* 63 Iowa 529, defendants had caused plaintiff to be indicted. The indictment was quashed, and the case resubmitted to the grand jury and another indictment was found. Defendants claimed they had nothing to do with the resubmission, but

the court held that, having caused the criminal action to be commenced, they could not escape liability for its continuance. The same principle was declared in *Bacon* v. *Towne et al.*, 4 Cush. 217, and *Goodrich* v. *Warner*, 21 Conn. 432.

It is immaterial whether defendant Grady swore to the complaint or procured another to swear to it. Grady went to the justice's office and told him what he wanted done, and immediately, or within a few minutes thereafter, Burrell appeared and made the complaint. The jury could therefore properly infer that Burrell made the complaint at the request of Grady. *Tangey* v. *Sullivan*, 183 Mass. 166.

Returning to the evidence, plaintiff was not bound by the paper signed by him to procure his discharge from jail, he being then under duress. Counsel urge, however, that, having put the paper in evidence himself, plaintiff was bound by it, and could not impeach its validity. The paper was not indispensable to plaintiff's case, for he could have proven his release without it. Therefore it is proper to consider the purpose for which he introduced it, which was to prove his release from jail. As a general rule, we must admit that a party, introducing documentary evidence for the purpose of proving a material part of his case, is bound by its contents, and will not thereafter be permitted to contradict any part of it. This rule, however, like most other general rules of law, is subject to exceptions, and the exception, rather than the rule, we think, here applies. The paper was in defendants' possession, and if they had introduced it for the purpose of showing that the prosecution had terminated by the consent and agreement of plaintiff, there can be no question of plaintiff's right to have impeached it. Why may he not be permitted to do so, even though he introduced the paper himself, when it is so apparent that he did so for a special and limited purpose? Rules of evidence are certainly intended to aid courts in the administration of justice. Hence, they should not be rigidly adhered to, when to do so would result in manifest injustice. We find the law thus stated in 4 Enc. of Evi., 842: "It quite frequently occurs that in order to establish a matter in dispute a party finds it necessary to introduce a document as the foundation of further proof relating to such document, in order to sustain the issue on his part. In such

case he is not bound by such document so as to prevent him from introducing such further testimony relating thereto, though the evidence introduced may have the effect of discrediting the document.'' In *Merchants Bank of Macon* v. *Rawls*, 7 Ga. 191, 50 Am. Dec. 394, it was held that a party introducing in evidence the books of a bank, while not allowed to discredit them as a whole, might show errors in particular items. In *Kingman* v. *Tirrell*, 11 Allen 97, (Mass.), it was held that one who puts in evidence a note with endorsements may show that the endorsements were incorrect. In *Douglass* v. *Hunn*, 24 Kan. 766, which was an action to quiet title, plaintiff offered in evidence a quitclaim deed to the defendant, which recited the execution of a tax deed to the grantor therein named. The deed was offered for the purpose of proving the adverse claim made by defendant, and the court held that plaintiff was not bound by the recitals in the quitclaim deed, and also that he was not bound to show that the tax deed was void or did not exist. In *Henny Buggy Co.* v. *Papp, Garnishee*, 73 Iowa 485, the court held that the good faith of a bill of sale might be challenged by the party offering it in evidence. See also the following cases, some of which, however, seem to rest upon statutes, making certain documents only prima facie evidence: *Fogg* v. *Farr et al.*, 16 Gray 396, (Mass.) ; *Raymond* v. *Nye*, 5 Metc. 151, (Mass.) ; *Parry* v. *Parry*, 130 Pa. St. 94; *Waldron* v. *Evans*, (Dak.), 46 N. W. 607; and *Dowdell* v. *Wilcox*, 58 Iowa 199.

The paper was not offered by plaintiff to prove a compromise of his prosecution, but to prove its termination by his release from jail. His discharge seems to have been conditioned on his signing the paper. How long he would have been detained in jail without a trial, if he had not signed the paper, does not appear. The evidence presents a case showing a flagrant misuse of the criminal process by a landlord, to eject his tenant, who, after having procured his arrest and imprisonment unlawfully, exacts from him a promise in writing not to sue for the wrong done, as a condition of his release. Such wrongs ought not to occur in a free country, governed by law. Although plaintiff introduced the paper he had a right, under the circumstances of this case, to prove that he signed it in order to obtain his liberty.

The amount of damages is claimed to be excessive.  Wide discretion is vested in juries in assessing damages in cases of this character, and notwithstanding we, if sitting as jurors, might not be willing to assess so great damages as the jury did in this case, still, as a court, reviewing their finding, we can not say that the verdict is so large as to evince corruption, partiality, passion or prejudice.  That is the criterion by which we must be governed in cases of this character.

· We have carefully read and considered the instructions given at the request of plaintiff, as well as those given on behalf of the defendant, also a number of others requested by defendant and refused by the court, and we find no error in the court's ruling in relation thereto.  The jury were fairly instructed concerning the law applicable to the case, and we find no good cause for setting aside the verdict.  The order appealed from will, therefore, be reversed, the verdict reinstated and a judgment entered thereon by this court.

*Reversed and rendered.*