NELLIE WOLFORD *v.* GOLDEY BROTHERS, INC., *a corporation*

(No. 7704)

Submitted October 11, 1933.   Decided October 31, 1933.

*J. Howard Hundley,* for plaintiff in error.

*Perry & Perry* and *MacCorkle, Clark & MacCorkle* and *Wm. M. Woodroe,* for defendant in error.

LITZ, JUDGE:

Plaintiff, Nellie Wolford, complains of the action of the trial court in setting aside a verdict of $2500.00 in her favor against defendant, Goldey Brothers, Inc.

Defendant is a foreign corporation, engaged in the sale of tonsorial supplies, with its principal place of business and general office in Cincinnati, Ohio. It operates a branch store in Charleston, West Virginia, formerly under the management and control of L. H. Schade, with power to sell on credit and collect accounts. In November, 1931, plaintiff, who was at the time conducting a beauty parlor in Charleston, negotiated with Schade as agent of defendant for the purchase of two Shelton hair driers. Schade agreed to accept from

plaintiff on the purchase price thereof some used hair driers of a different type. At the time of the transaction, plaintiff delivered to Schade her postdated check for $20.00, payable to defendant, as a further credit on the purchase price of the Shelton driers. Because of refusal by plaintiff to accept the articles, as defendant contends, or for the reason, as plaintiff claims, the defendant insisted on delivering to her a different type of hair driers, she stopped payment on the check and nothing further came of the transaction until May, 1932, when Schade delivered the check, for collection, to one H. Blustein, who was operating a collecting agency in Charleston. On the same day, Blustein swore out a warrant before a justice of the peace for the arrest of the plaintiff on the charge of having violated section 39, article 3, chapter 61, Code 1931, known as the bad check statute, and as special constable, immediately arrested her upon the warrant. She was taken by him, at her request, directly to defendant's store, where (according to the testimony of herself and Mrs. Frances Price, accompanying her) Schade replied, in answer to her question to him, "Do you know what you are doing?", "Yes, *we have you under arrest, and you are going to pay that check.*" She was then taken by Blustein before the justice issuing the warrant and there gave bond to appear at a later day for trial. On the day fixed, she appeared, and, upon trial before the justice, was discharged.

Defendant, at the trial of this action, apparently did not seek to deny responsibility for the acts of Schade, but contended merely, as shown by the evidence and instructions, that he had not instructed Blustein to swear out the warrant or to prosecute plaintiff. It now shifts its position by claiming that Schade did not possess authority to bind it by instigating the malicious prosecution. In this connection, numerous authorities are cited to the effect that an agent with authority merely to collect has no implied authority to do so by the institution of criminal proceedings. It is also insisted that the same rule should apply to the manager of a business with authorty to collect accounts for his principal. *Lamm* v. *Charles Stores Company, Inc.*, 201 N. C. 134, 159 S. E. 444, and *Genovese* v. *Butt*, (Tex.) 48 S. W. (2d) 587, are relied on as sustaining this contention. In the first case, J. B. Long,

the store manager of the defendant, who was not authorized to accept personal checks or shown to have collected any accounts or sold any merchandise on credit for his principal, instituted a criminal proceeding against the plaintiff (a young woman of exemplary reputation) for obtaining merchandise and money from defendant upon an alleged fraudulent check. Plaintiff denied she knew anything about the check or that she had had any transaction with the defendant. The check was paid by Long out of his own funds to the employer. A non-suit entered by the trial court was affirmed upon appeal. In the opinion it is said: "The plaintiff insists that she did not sign the check, and, furthermore, that she had never been in the store of defendant. * * * Hence it follows that the agent of defendant, without any justification, and without the sanction of any sort of business transaction, undertook to invoke the criminal law against the plaintiff either by reason of mistaken identity or by virtue of a reckless notion that she had committed a crime." In the second case, the plaintiff, who could not read or write English, made a purchase at the store of the defendant, for which he gave a check filled out by a clerk. Through mistake, the check was drawn on a bank different from that intended, and, for that reason, was not paid. One H. E. Kelly, called the manager of the store, whose authority was in no way defined in the evidence, instituted criminal proceedings against the plaintiff on the check. The issue, as stated by the court, was: "Whether or not the bald fact that Kelly was manager of the store, at the time he made complaint against Genovese, implies authority in Kelly as the agent of Butt to initiate said criminal action." The question was answered in the negative.

Neither of those cases, in our opinion, meets the facts of this case, in which the agent, Schade, was in charge of the domestic business of a foreign corporation whose main office and chief place of business were in another state. In these circumstances, he will be treated as a general agent.

In *Fetty* v. *Huntington Loan Co.*, 70 W. Va. 688, 74 S. E. 956, the loan company was held liable for the institution of a criminal proceeding by its secretary charging the plaintiff with grand larceny for having obtained by false pretense a loan from another loan corporation whose assets had been

acquired by the defendant. It was not shown that the secretary possessed any particular authority or that the corporation, through any other of its officers, had authorized or ratified his acts. In *Lyons* v. *Davy Pocahontas Coal Company*, 75 W. Va. 739, 84 S. E. 744, this court affirmed a judgment of $3500.00 in favor of Lyons against the Coal Company for the instigation by its superintendent of a criminal proceeding against plaintiff charging him with unlawful trespass to its personal property. The prosecution appears to have been a mere pretense for the purpose of causing Lyons to vacate a dwelling he had been occupying as an employee of the company. In *Nees* v. *Goldman Stores, Inc.*, 109 W. Va. 329, 154 S. E. 769, 772, a domestic in the home of plaintiff, Mrs. Erma Nees, had purchased a coat and hat from the defendant upon installments subject to the right of the vendor to reclaim the property for default in the payment of the purchase price. A judgment of $7500.00 was sustained in favor of the plaintiff against the defendant for personal injury inflicted upon her by the defendant's store manager in an attempt to invade her home for the purpose of recovering the goods. In the opinion, it is said: "It is quite generally held that where the principal puts the management of his business or property in the hands of his agent, the former is responsible for the acts of the latter committed within the scope of employment, and in furtherance of the principal's business, although the act was committed through lack of discretion or judgment, or loss of temper occasioned by the circumstances of the occasion." In *Hostettler* v. *Carter* (Okla.), 175 P. 244, the owner of a store was held liable for the acts of the manager in causing the arrest of a third party for passing alleged forged checks upon the merchant.

We, therefore, reverse the judgment of the circuit court, reinstate the verdict and enter judgment thereon.

*Reversed and entered.*