Everett Meadows *v.* Corinne Coal & Land Company

(No. 7892)

Submitted October 30, 1934. Decided November 13, 1934.

*Wm. M. Holroyd* and *Bailey & Shannon,* for plaintiff in error.

*W. H. Rardin,* for defendant in error.

Maxwell, Judge:

This writ of error presents for review the action of the trial court in setting aside a verdict for $2,000.00 in favor of the plaintiff and against the defendant for malicious prosecution.

The defendant owns a number of dwelling houses in the town of Corinne. The plaintiff leased one of them

and occupied it with his family. On the 1st of February, 1933, the plaintiff being in default of two months rent ($6.00 per month), Lee Blackwell, agent in charge of defendant's said properties, caused a distress warrant to be issued against the plaintiff by a justice of the peace of Wyoming County. Blackwell and a constable forthwith went to the plaintiff's home to execute the warrant, but ascertaining from a woman who was looking after the plaintiff's children that he was at work in a coal mine and that his wife was at the instant absent from the home, levy was not then made under the warrant. Later in the day, after the plaintiff's wife had returned to the home, the constable undertook to execute the warrant by locking up the house with padlocks which had been furnished him by Blackwell. This made it necessary for plaintiff's wife and children to seek shelter at a neighbor's home.

When the plaintiff returned from work that evening, he found his home locked and his family gone. He then went to the county seat and sought the constable who, on advice of counsel, gave the plaintiff keys to the padlocks on the house. The plaintiff then returned to his home and entered. His wife and children came back. As the plaintiff made preparations for starting a fire for heating and cooking purposes, Blackwell, accompanied by his young son, looked on from the seclusion of an adjoining house. At that time Blackwell did not know that the constable had returned the keys to the plaintiff; so he conceived the idea that the plaintiff had unlawfully entered the house. Immediately, he went before the justice who had issued the distress warrant and made complaint upon which a warrant for breaking and entering the property was issued. State policemen, accompanied by Blackwell, forthwith executed the warrant by arresting the plaintiff and placing him in jail where he remained until he was taken the following morning before the justice who dismissed the warrant on motion of Blackwell.

Directly following the dismissal of the felony warrant Blackwell procured the issuance of a misdemeanor war-

rant against the plaintiff charging him with the unlawful destruction of certain property of the defendant. This warrant was served on the plaintiff in the justice's office. Upon a prompt trial before a jury summoned by the justice, the plaintiff was acquitted. This latter warrant grew out of the fact that Blackwell, while watching from seclusion the movements of the plaintiff the evening of February 1st, observed him remove two small boards from a partition wall in the house for the purpose of making kindling with which to start a coal fire.

The plaintiff, by his declaration, impleads both arrests, but the arrest under the felony warrant, of course, furnishes the gravamen of his complaint. The trial court seems so to have treated it. We shall do likewise.

In the order setting aside the verdict, the trial court recited, "the court having maturely considered the motion of the defendant to set aside the verdict of the jury heretofore returned herein, is of opinion to and doth sustain said motion on the grounds there was probable cause for the issuance of the warrant complained of in plaintiff's declaration."

Standing at the beginning of the consideration of the legal aspects of this case is the fact of the unlawful exclusion of the plaintiff and his family from their home the evening of February 1, 1933. Under a distress warrant for rent (Code 1931, 37-6-13) distraint may be made on the lessee's goods found on the leased premises, or which may have been removed therefrom not more than thirty days. The goods may be taken into possession by the officer executing the writ, but ordinarily he is not authorized to take charge of the whole of the leased premises and exclude the tenant therefrom. 36 Corpus Juris, p. 575; 2 Tiffany, Landlord and Tenant, p. 2059.

Though the plaintiff was in arrears of rent February 1, 1933, he was nevertheless in lawful possession of the house which he occupied as his home. Having been unlawfully excluded therefrom, there was no possible theory upon which there could be based the idea that his re-entry that evening involved a breaking and entering within the meaning of the criminal statute on the sub-

ject. His right of occupancy at that time was superior to the rights of all other persons, including the owner. Whether he did or did not obtain the keys from the constable is not important. He had a right to re-enter in such peaceful manner as he saw fit, so long as he did not unnecessarily injure the property. It follows that Blackwell's ignorance of the delivery of the keys by the constable to the plaintiff makes no change in the situation. It must be weighed in the light of basic principles already discussed.

In the situation presented was there probable cause for Blackwell to procure the issuance of the felony warrant? "Probable cause for instituting a prosecution is such a state of facts and circumstances known to the prosecutor personally or by information from others as would in the judgment of the court lead a man of ordinary caution, acting conscientiously, in the light of such facts and circumstances, to believe that the person charged is guilty." *Radochio.* v. *Katzen,* 92 W. Va. 340, 114 S. E. 746.

Blackwell admitted on cross-examination that he did not know what might be legally done under the distress warrant; that is to say, at the time he caused the issuance of the felony warrant, he did not know whether the plaintiff had been lawfully excluded from the possession of the house. One may not close his eyes to the legal rights of another or act in total ignorance thereof, and then successfully assert that his precipitous action in causing the unlawful arrest of such other was supported by probable cause. On undisputed facts, probable cause is a question of law for the court. *Vinal* v. *Core,* 18 W. Va. 1, syllabus 8. The factual situation was not such in our judgment as would lead a reasonable man of ordinary caution, acting conscientiously upon the facts, to believe the plaintiff guilty of unlawfully breaking and entering the premises.

Another essential element of malicious prosecution is malice on the part of the prosecutor. *Vinal* v. *Core, supra.* Blackwell, as a witness for the defendant, on direct examination, in response to a leading and suggestive ques-

tion as to whether he had any other motive in mind in swearing out the warrants than that the plaintiff had violated the law and ought to be punished, answered, "That is all." But, on cross-examination, these two questions were asked him: "All in the world you were doing you were trying to further the interest of the people that you were working for?" and, "You were simply helping them out in collecting their rent and doing what you thought was necessary to protect their property, is that your idea?" To each question he answered, "Yes, sir." The entire circumstances, together with the latter answers of the defendant's agent, were sufficient to warrant the jury in finding that the agent acted not primarily for vindication of the law, but to advance the interests of his principal. Mosely v. McCrory Co., 101 W. Va. 480, 133 S. E. 73.

The defendant's denial that Blackwell had authority to initiate criminal prosecutions is unavailing to relieve it of responsibility. He was not a mere special agent. His regular and general duties were to look after the defendant's property in the town of Corinne. "A master may not limit his liability to such of the conduct of his servant or agent as is discreet and within the bounds of propriety, and avoid liability as to such conduct as is indiscreet and improper. Where a master sends forth an agent he is responsible for the acts of his agent within the apparent scope of his authority, though the agent oversteps the strict line of his duty." Nees v. Goldman Stores, 106 W. Va. 502, 505, 146 S. E. 61. See authorities there cited. Consult, also, Wolford v. Goldey Bros., 114 W. Va. 259, 171 S. E. 537; Nees v. Goldman Stores, 109 W. Va. 329, 154 S. E. 769; Dunlap v. Railway Co., 107 W. Va. 186, 148 S. E. 105; Mosely v. McCrory Co., supra; Lyons v. Coal Co., 75 W. Va. 739, 84 S. E. 744; Fetty v. Loan Company, 70 W. Va. 688, 74 S. E. 956. Syllabus one of the Fetty case reads: "A corporation is liable for a malicious prosecution by its agent, acting within the scope of his employment and in furtherance of his company's business, notwithstanding the company may not have expressly authorized or ratified his act."

Defendant urged in the trial court and here that the verdict is excessive. A court may set aside a verdict because excessive, but such authority may not be arbitrarily exercised. It is a general rule that where damages are indeterminate, mere difference of opinion between the court and the jury as to what the amount of the verdict should be will not justify the court in disturbing the verdict; that, to warrant such action, the verdict must evince passion, prejudice, partiality, or corruption in the jury. *Nichols* v. *Railway Co.*, 62 W. Va. 409, 416, 59 S. E. 968. Cf. *Kennedy* v. *Railway Co.*, 68 W. Va. 589, 70 S. E. 359; *Wilson* v. *Amusement Co.*, 99 W. Va. 290, 300, 128 S. E. 381. Gauging the verdict by this standard we perceive no basis upon which the court would be warranted in setting it aside because of the amount thereof.

Being of opinion that there was no well founded reason why the verdict should be set aside, we reverse the judgment, reinstate the verdict and render judgment thereon.

*Reversed; judgment rendered.*