CHARLES O. SHOW *v.* MOUNT VERNON FARM DAIRY
PRODUCTS, *Inc.*

(No. 9332)

Submitted October 13, 1942.  Decided November 24, 1942.

*Ritchie, Hill & Thomas* and *H. D. Rollins,* for plaintiff
in error.

*B. J. Pettigrew,* for defendant, in error.

FOX, PRESIDENT:

Charles O. Show instituted his action at law in the Cir-
cuit Court of Kanawha County against the Mt. Vernon
Farm Dairy Products, Inc., a corporation, seeking to re-

cover damages for alleged malicious prosecution. A jury trial was had and a verdict returned in his favor against the defendant for the sum of $10,000.00. A motion made to set aside the verdict was overruled, and judgment entered thereon. To this action of the trial court, the defendant prosecutes this writ of error.

On and prior to the 24th day of March, 1938, the plaintiff was an employee of the defendant, his position being designated as route manager. Defendant was engaged in the business of selling and distributing milk and milk products, and operated a number of routes leading out from the City of Charleston. The plaintiff had general charge of other employees of the company who operated these routes, among whom was one Clark Deaver. On March 24, 1938, for reasons having no apparent connection with this action, the plaintiff was discharged; on the day following, Clark Deaver voluntarily terminated his employment with the defendant; and Show and Deaver, together, then engaged for a time in the milk business. It appears that upon an audit of the defendant's books, suspicion was created as to whether there was a shortage in its accounts, and some further investigation led to the belief that Clark Deaver had failed to account for moneys collected on his route. On June 8, 1938, Deaver was called to the office of the defendant, and there had a conversation with the defendant's general manager, E. E. Bowyer, partially at least, in the presence of another employee, Raymond Stewart. Bowyer, in the presence of Stewart, advised Deaver that his accounts were short. Deaver at first denied knowledge of any such shortage, but later admitted that he was short in his account to the extent of $250.00. Deaver, in his testimony on the trial of this action, makes the following statement:

> "Well, in June of 1938, I was called into the office of Mr. Bowyer at the Mount Vernon by Mr. Bowyer, that is the proprietor or the manager of the Mount Vernon Dairy Company, and he told me that I was short and I said—I admitted taking $250. I promised to pay it back if he would make it in easy payments because I did not have

a job at that time. I also had just got up out of bed with typhoid fever and I could not work for some time, and so I told him I would pay it back, and I still will pay the $250 back, but at that time when he asked me about it he said, 'Why should you take all the blame of this money?' He said, 'I know you got it all but why should you take the blame?' and left the impression that I should—that Charlie could be brought in on it, and he and I talked it over in his office about the affidavit of Mr. Show, that I would implicate Mr. Show in it."

He also testified "I was told I wouldn't be prosecuted by Mr. Bowyer." Bowyer and Deaver then went to the office of an attorney, and Deaver made an affidavit, duly verified, implicating the plaintiff in the peculations which resulted in the shortage. In this affidavit he stated that the plaintiff had instructed him how to cover up his shortages, and that of the money of the defendant retained by him he paid to Show about three-fourths; that these peculations covered a period of from eight months to one year. At another point, he stated that Show got more than one-half of the money which he held out. It appears from the record that Deaver was under a bond in the penalty of three hundred dollars, and that the bond of the plaintiff was in the penalty of twelve hundred and fifty dollars. The theory of the plaintiff is that Deaver was induced by Bowyer to implicate the plaintiff, for the reason that the bond of Deaver was probably insufficient to cover the entire shortage, whereas, if Show was implicated therein, his bond was probably ample to cover the same. In reply to this suggestion, defendant contends that at the time the affidavit was taken there was nothing to indicate the amount of the shortage, or that Deaver's bond would not cover the same.

Following the taking of Deaver's affidavit, a further and complete audit of the company's books was made, the result of which was that the actual shortage growing out of Deaver's route was $1108.40. Shortages on other routes operated by Eads and Kidd developed. This audit was

completed in August, 1938, and subsequent thereto, in December, following, the full amount of the shortage on the Deaver route was collected from the surety company which had bonded both Show and Deaver. The evidence does not show that the defendant took any independent action with respect to the prosecution of either Show or Deaver. However, a representative of the surety company laid the matter before an assistant prosecuting attorney of Kanawha County, who then got in touch with the auditor and with Bowyer, and the Deaver affidavit and other papers were turned over to the prosecuting attorney's office. The matter was presented to the April term, 1939, grand jury of Kanawha County, and a joint indictment returned against Show, Eads and Kidd, separate indictments against Eads and the plaintiff, and a "not a true bill" as to Clark Deaver. Bowyer and the auditor for the defendant appeared before the grand jury in answer to a summons and testified, and Bowyer testified that he had not asked the grand jury to prosecute Deaver. The case was placed upon the docket of the Intermediate Court. There was a term of said court held in June and September, 1939, and January, 1940, at each of which terms the plaintiff appeared, and he had, in the meantime, employed counsel. At the April term, 1940, all of the indictments were dismissed on motion of the prosecuting attorney, but there is nothing in the record indicating that this action was taken at the instance of the defendant. On the contrary, the assistant prosecuting attorney testified that it had no part in the dismissals. It should here be stated that sometime early in 1941 Clark Deaver repudiated the affidavit made by him on June 8, 1938, and testified for the plaintiff in this action, as set out above. The theory of the plaintiff is that Bowyer, acting as general manager and representative of the defendant, and within the scope of his employment, fraudulently induced Clark Deaver to make a false affidavit, by which the plaintiff herein was implicated in Deaver's criminal conduct, and that the affidavit so obtained was later used to procure the finding of the indictment against the plaintiff.

The declaration contains the following averment:

"That at the 1939 April Term of the Grand Jury for Kanawha County the said defendant corporation, while acting by and through its authorized agents, contriving maliciously to wrong and injure the said plaintiff, and to cause the said plaintiff to be held in the custody of the law for a long space of time, and to cause the plaintiff to be oppressed and annoyed, heretofore, to-wit, at said 1939 April Term of the Grand Jury for Kanawha County appeared said corporation by its agents and falsely and maliciously and without any reasonable or probable cause whatever, charged said plaintiff with embezzling from said corporation a large sum of money; to-wit: $1108.40; and upon said charge falsely and maliciously and without any reasonable or probable cause whatsoever caused the said Grand Jury to return an indictment in due form of law against the said plaintiff for committing a felony, to-wit: embezzlement of $1108.40 from said corporation, and directed the State of West Virginia, by and through the Prosecuting Attorney of Kanawha County, to bring said plaintiff to trial to answer for said felony, which the said defendant had maliciously and without probable cause accused the said plaintiff of committing; * * *."

The declaration then goes on to show the several continuances of the case and the final dismissal of the indictment.

The questions arising on the record may be briefly summarized as follows: (1) the rule governing recovery or non-recovery in an action for malicious prosecution; (2) whether the prosecution of the plaintiff was instigated by the defendant maliciously and without probable cause; (3) whether the defendant was liable for the alleged misconduct of its general manager in procuring the Deaver affidavit of June 8, 1938; (4) whether, on the declaration and proof, the allowance of exemplary, punitive or vindictive damages was warranted; and (5) certain questions with respect to instructions, which will be hereafter detailed.

There seems to be no dispute as to the applicable rule of law governing what is necessary to sustain a malicious

prosecution. In *Vinal* v. *Core and Compton,* 18 W. Va. 1, this Court laid down the following rule with respect to what must be proven to justify a verdict against a defendant in an action of malicious prosecution:

> "First, That the prosecution alleged in the declaration had been set on foot and conducted to its termination in the final discharge of the plaintiff * * *; Second, That it was instigated and procured by the co-operation of the defendants; Third, That it was without probable cause; Fourth, That it was malicious."

Counsel for the parties herein seem to recognize this rule as governing in this case, and the case was tried on that theory. There can be no question as to the termination of the prosecution, and plaintiff's discharge therefrom, but there is a question as to whether the defendant instigated the same, and the further question, whether, if so instigated, it was without probable cause and with malice.

Before these questions can be considered, it is first necessary to pass upon the liability of the defendant for the acts of its general manager. Defendant strenuously contends that, even if Bowyer did fraudulently procure the making of the Deaver affidavit, such an act was beyond the scope of his employment, an act illegal and improper in itself, and for which the defendant cannot be held liable. We are unable to agree with this contention. Bowyer was the general manager of the defendant, had charge and supervision of its employees, and control and supervision over Show, and the route men working under him. One of his important duties was to make collections for the products which the company sold and distributed. The checking up of the accounts, and requiring all moneys collected by employees to be promptly turned in, was certainly within the scope of his employment, and in all this he was working in furtherance of his company's business. While many cases will be found to the effect that acts and conduct of employees, illegal and unlawful in their nature, cannot be treated as within the scope of their employment, and cannot be attributed to the employer, we feel that this is

not such a case. This Court has held that "A corporation is liable for a malicious prosecution by its agent, acting within the scope of his employment and in furtherance of his company's business, notwithstanding the company may not have expressly authorized or ratified his act." *Fetty* v. *Huntington Loan Co.*, 70 W. Va. 688, 74 S. E. 956; *Meadows* v. *Corinne Coal & Land Co.*, 115 W. Va. 522, 177 S. E. 281.

On the question of whether there was lack of probable cause and malice on the part of the defendant in connection with the prosecution under investigation, we think it clearly a case for jury determination. Being of the opinion that the defendant was liable for the acts of its agent, Bowyer, if that agent did, in fact, fraudulently procure from Deaver the affidavit implicating the plaintiff in his, Deaver's, criminal activities, and that affidavit, in connection with other testimony, was used in procuring the indictment against the plaintiff, the fact that the testimony of Bowyer and the company's auditor was procured by the state in answer to a subpoena to appear as witnesses before the grand jury, does not, in our opinion, as a matter of law, relieve the defendant of liability therefor. But for the Deaver affidavit, it is probable that there would have been nothing on which a criminal or other charge against the plaintiff could have been based; and if Bowyer, whatever the motive may have been, without knowledge of any misconduct on the part of the plaintiff, fraudulently procured a false affidavit tending to establish criminal conduct against the plaintiff, he cannot escape the consequence which would naturally flow from the procurement thereof. The affidavit was given publicity by being turned over to the surety company, and was made the basis of a claim under the bond written by it for Show. The natural and probable consequence of turning that affidavit over to the surety company would be a prosecution of the plaintiff for embezzlement. Having done this, defendant cannot say that, merely because the testimony of its agent was procured through the service of a subpoena to testify before the grand jury, it was not voluntarily offered, and wipes out the initial iniquity. The fact that Bowyer's fraudulent

conduct, if any, rests only on the testimony of a man admittedly guilty of either false swearing or perjury, should be taken into consideration, but after all, a jury is the judge of the credibility of witnesses.

Questions were raised with respect to the instruction which authorized the jury to assess punitive damages, and in admitting evidence concerning the financial worth of the defendant. As to the right to recover punitive damages, the first question is whether, under the declaration, such damages could be assessed; and the second is whether there should have been a separate finding as to such damages. The declaration alleges that the acts of the defendant were malicious, and under our holding in *O'Brien v. Snodgrass*, 123 W. Va. 483, 16 S. E. 2d 621, an allegation of malice is apparently sufficient upon which to base a finding of punitive damages. The instruction given at the instance of the plaintiff on this point goes somewhat beyond the allegations of the declaration, being to the effect that "if you find said criminal prosecution of the plaintiff to have been commenced or pursued by the defendant for private ends or with reckless disregard of the rights of the plaintiff", you may award punitive damages. The declaration falls short of any allegation that the prosecution alleged to have been instigated by the defendant was for a private end, and with reckless disregard of the rights of the plaintiff. As a matter of fact, there is nothing in the record clearly showing that the jury found punitive damages. We can only reach the conclusion that it did so by inference. The verdict might be open to attack as being excessive, were it not for the injection of the question of punitive damages in the case, and the presumption, in the circumstances, that the jury allowed such damages. This situation furnishes a plausible excuse for the position of the defendant that the verdict should have shown a separate finding as to different types of damages awarded, for the reason that punitive damages must bear some reasonable relation to the compensatory damages found. We think the better practice is to separate compensatory damages from any exemplary, punitive or vindictive damages assessed as punishment, but the defendant did

not ask for such a separation and finding, and is not in very good position to complain that such a finding was not made in this case. No doubt, if requested, the trial court would have promptly submitted interrogatories to the jury on which such finding would have been made. The action of the defendant's counsel in not protecting themselves in this regard comes close to invited error, of which they cannot now complain. It is clear that if punitive damages were recoverable, testimony as to the financial standing of the defendant was, for obvious reasons, pertinent and admissible.

We now come to the question of instructions. The defendant particularly objects to plaintiff's instructions Nos. 1 and 3. Instruction No. 1, given at the instance of the plaintiff, reads as follows:

> "The Court instructs the jury that this is a suit for the recovery of damages for malicious prosecution, and if you believe from the evidence in this case that the defendant instigated criminal proceedings against the plaintiff, Show, in the Intermediate Court of Kanawha County, West Virginia, charging him with a felony and that upon investigation by the Prosecuting Attorney of said county, by and with the approval of the Intermediate Court of said county, said prosecution was dismissed, and such action is a successful termination of said prosecution, and is such a termination thereof as is legally sufficient upon which to maintain an action for malicious prosecution."

The defendant says that this instruction tells the jury that the instigation of the criminal proceeding, and the subsequent dismissal of the same, is sufficient upon which to maintain an action for malicious prosecution, and takes from the jury consideration of the essential requirements to the maintenance of such an action, namely, that it was so instigated without probable cause and with malice; and also leaves out any question as to the circumstances in which the prosecution was dismissed. We think the instruction was improper, and that its giving was prejudicial error. The mere instigation of a criminal action, and its subsequent dismissal, do not create a right to maintain

an action for malicious prosecution, unless that instigation is accompanied by malice and lack of probable cause therefor. If plaintiff's declaration had merely stated that the defendant instigated the prosecution resulting in the finding of the indictment, and that the same was afterwards dismissed, the declaration would have been open to demurrer, and such a demurrer should and would have been promptly sustained. This being true, can we say that an instruction which permits a recovery upon a showing of an instigation of a criminal proceeding, and its subsequent dismissal, should be approved? We are clearly of the opinion that such a ruling should not be made. With reference to instruction No. 3, given at the instance of the plaintiff, the jury was told that "if you believe from a preponderance of all the evidence that the defendant, through its agents, was actuated in the criminal prosecution of the plaintiff, Show, by a desire to injure his reputation or to collect from the bonding company a sum of money by charging him with embezzlement, then the defendant must, in law, be held to have been actuated by malice." The vice in this instruction is that it permits the jury to find that the prosecution was instigated by the defendant in order to collect from the bonding company a sum of money on a bond executed by it for the plaintiff, when, in fact, the evidence in the case shows that, if we treat the finding of the indictment as the instigation of criminal prosecution, then the defendant had already collected from the bonding company the amount of Show's alleged shortage in full. We do not think this instruction should, in the circumstances, have been given. If it were thought necessary to introduce this element into the case by instructions, it could only be done by incorporating therein some reference to the action of the defendant prior to the time when the money was collected from the bonding company. Instructions two and four, given at the instance of the plaintiff, assume that the defendant commenced the prosecution against the plaintiff. That, as we view it, is one of the controverted questions in this case, and one for jury determination, and the assumption that defendant did commence the prosecution was unwar-

ranted. Specific objections were made to instructions one and three, but no objection as to the point mentioned in instructions two and four was made.

The giving of the instruction No. 1 at the instance of the plaintiff was, in our opinion, prejudicial error, and for that reason alone, the judgment of the Circuit Court of Kanawha County must be reversed, the verdict set aside and a new trial awarded.

Our criticism of the other instructions given at the instance of the plaintiff will furnish a guide for their correction upon a new trial.

> *Judgment reversed; verdict set aside; new trial awarded.*