IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2023 Term

_____

No. 22-779

_____

FILED

**November 9, 2023**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL.
WEST VIRGINIA ATTORNEY-GENERAL,
MEDICAID FRAUD CONTROL UNIT; AND
NATHAN R. LYLE, IN HIS INDIVIDUAL CAPACITY, AND
IN HIS CAPACITY AS AN EMPLOYEE OF
THE WEST VIRGINIA ATTORNEY-GENERAL
MEDICAID FRAUD CONTROL UNIT,
Petitioners,

V.

THE HONORABLE KENNETH D. BALLARD,
JUDGE OF THE CIRCUIT COURT OF KANAWHA COUNTY;
AND HISEL BAILEY,
Respondents.

_____

PETITION FOR WRIT OF PROHIBITION

WRIT GRANTED

_____

AND

_____

No. 22-781

_____

WEST VIRGINIA ATTORNEY-GENERAL,
MEDICAID FRAUD CONTROL UNIT; AND
NATHAN R. LYLE, IN HIS INDIVIDUAL CAPACITY, AND
IN HIS CAPACITY AS AN EMPLOYEE OF

THE WEST VIRGINIA ATTORNEY-GENERAL,
MEDICAID FRAUD CONTROL UNIT,
Defendants Below, Petitioners,

V.

HISEL BAILEY,
Plaintiff Below, Respondent.

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Kenneth D. Ballard, Judge
Civil Action No. 22-C-145

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

_____


Submitted: September 13, 2023
Filed: November 9, 2023

Michael D. Dunham, Esq.                John J. Brewster, Esq.
Caleb B. David, Esq.                   Scott H. Kaminski, Esq.
Tyler L. Rittenhouse, Esq.             Ray, Winton & Kelley, PLLC
Shuman McCuskey Slicer PLLC            Charleston, West Virginia
Charleston, West Virginia              Attorneys for Respondent
Attorneys for the Petitioners          Hisel Bailey

JUSTICE BUNN delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "Because Title 42, U.S.C.A. § 1983 (1979) does not create substantive rights, but rather provides a remedy for pre-existing rights, all claims under this section must allege a specific violation of the constitution or 'laws' of the United States. [To] recover damages under § 1983, a plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) [the] conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." Syllabus point 4, *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996).

2.      "A government-official defendant can be held liable only for his or her own misconduct. Therefore, to succeed on a claim of an alleged constitutional violation under United States Code title 42, section 1983, a plaintiff must prove that each government-official defendant, through that official's own individual actions, has personally and directly violated the Constitution, and that such violation caused or contributed to the plaintiff's injuries." Syllabus point 3, *Vinson v. Butcher*, 244 W. Va. 144, 851 S.E.2d 807 (2020).

3.     "A circuit court's denial of a motion to dismiss that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine." Syllabus point 1, *West Virginia Board of Education v. Marple*, 236 W. Va. 654, 783 S.E.2d 75 (2015).

4.     "To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability." Syllabus point 11, *West Virginia Regional Jail and Correctional Facility Authority v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

5.     "If the plaintiff identifies a clearly established right or law which has been violated by the acts or omissions of the State, its agencies, officials, or employees, or can otherwise identify fraudulent, malicious, or oppressive acts committed by such official or employee, the court must determine whether such acts or omissions were within the scope of the public official or employee's duties, authority, and/or employment. To the

extent that such official or employee is determined to have been acting outside of the scope of his duties, authority, and/or employment, the State and/or its agencies are immune from vicarious liability, but the public employee or official is not entitled to immunity in accordance with *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992) and its progeny. If the public official or employee was acting within the scope of his duties, authority, and/or employment, the State and/or its agencies may be held liable for such acts or omissions under the doctrine of *respondeat superior* along with the public official or employee." Syllabus point 12, *West Virginia Regional Jail and Correctional Facility Authority v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

**BUNN, Justice:**

In these consolidated proceedings, the West Virginia Attorney General's Medicaid Fraud Control Unit ("MFCU") and Nathan R. Lyle, a MFCU investigator, seek review of the circuit court's denial of their motion to dismiss certain claims alleged in a civil rights action brought by Mr. Hisel Bailey. In case number 22-779, MFCU and Mr. Lyle (collectively "Petitioners") seek a writ of prohibition to prevent the circuit court from enforcing the part of its order finding that Mr. Bailey could maintain 42 U.S.C. § 1983 claims against both MFCU and Mr. Lyle. They further seek to prevent the circuit court from allowing Mr. Bailey to go forward with a whistle-blower claim against Mr. Lyle. We grant the requested writ of prohibition. MFCU, a state agency, and Mr. Lyle in his official capacity, may not be subjected to § 1983 claims. Furthermore, Mr. Bailey's whistle-blower claim is unsustainable because Mr. Lyle had no authority to make decisions affecting Mr. Bailey's employment and, therefore, was not his employer.

In case number 22-781, Petitioners appeal the circuit court's decision denying them qualified immunity from Mr. Bailey's § 1983 claims for unreasonable seizure of the person against Mr. Lyle. These claims are based on two grounds: (1) an alleged violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); and (2) Mr. Bailey's potential loss of liberty from an allegedly false report Mr. Lyle submitted to the Cabell County prosecuting attorney. Petitioners also appeal the circuit court's rulings denying them qualified and prosecutorial immunity from Mr.

1

Bailey's claim of malicious prosecution. A § 1983 claim may not, as a matter of law, be founded on a *Miranda* violation, and the mere risk of a loss of liberty is insufficient to establish seizure of the person. Therefore, Mr. Lyle is entitled to qualified immunity from Mr. Bailey's § 1983 claims, and the circuit court erred by concluding otherwise. As to Mr. Bailey's malicious prosecution claim, we find that the complaint fails to allege sufficient facts to meet the required heightened pleading standard to overcome MFCU's and Mr. Lyle's qualified immunity, and the circuit court additionally failed to address whether Mr. Lyle was acting within the scope of his employment—an analysis necessary to determine MFCU's entitlement to qualified immunity for any vicarious liability for Mr. Lyle's alleged conduct. Therefore, additional proceedings before the circuit court are required. Finally, the circuit court correctly found Petitioners are not entitled to prosecutorial immunity. The circuit court's order is affirmed in part, and reversed in part, and this case is remanded for additional proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL HISTORY[1]

Mr. Bailey is a registered nurse. At the time of the incident underlying these proceedings, he had been employed by Mildred Mitchell-Bateman Hospital ("MMBH")

---

[1] These facts merely recite what Mr. Bailey has alleged in his complaint. Given that this case is at the Rule of Civil Procedure 12(b)(6) dismissal stage, and the litigation below is ongoing, we do not resolve any disputed facts. It is well established that, at this stage, the Court must take all allegations in the complaint as true.

for about six years.[2] MMBH is a psychiatric facility operated by the West Virginia Department of Health and Human Resources ("DHHR").

Mr. Bailey alleges that on January 7, 2019, he and Krista Menchaca, a health services worker, were walking a group of MMBH patients to the cafeteria for dinner. Among them was M.C., a long-term patient of MMBH who had a known history of self-harm and self-mutilation, which Mr. Bailey had witnessed at times. On the way to the cafeteria, M.C. expressed a desire to beat and kill his mother.[3] He resisted attempts by Mr. Bailey and Ms. Menchaca to redirect his attention. M.C.'s conduct escalated, and he punched a wall causing his knuckles to bleed. Expressing pleasure at the sight of his own blood, M.C. threatened to bite himself and raised his arm toward his mouth. Mr. Bailey tried to keep M.C. from biting himself, and a struggle ensued. M.C. has an unsteady gate due to cerebral palsy, so both men fell to the floor where M.C. bit, struck, and kicked Mr. Bailey, and forcefully grabbed his testicles. Ms. Menchaca called for assistance, and four other MMBH employees arrived and gained control over M.C. Mr. Bailey then escorted M.C. back to his unit at MMBH where staff examined MC, found a small bump and small cut over his eyebrow, and placed a bandage on the cut.

---

[2] According to Mr. Bailey, he had consistently received good performance reviews by MMBH and had no history of discipline.

[3] Mr. Bailey describes M.C. as an "Intellectual Development Disorder" patient.

3

On January 11, 2019, Michelle Woomer, an employee of Legal Aid of West Virginia ("LAWV"), was making rounds at MMBH and observed bruising around M.C.'s eye. She asked M.C. about the bruise. He first stated that Mr. Bailey had thrown him against a wall and banged his head during the January 7 event. Later, M.C. described that Mr. Bailey threw him to the floor and banged his head during the episode. M.C. also explained that the incident was witnessed by another patient, L.M. Ms. Woomer conducted an initial investigation of the event, which Mr. Bailey claims was unauthorized insofar as Ms. Woomer had not yet been officially assigned to investigate. As part of her initial investigation, Ms. Woomer read the nursing notes, including a report by Mr. Bailey, and viewed a security video of the struggle, which is of poor quality[4] and has no sound. John Koeber and Olivia Shields, employees of MMBH; MMBH CEO Craig Richards; and LAWV employee Teri Stone also viewed the video footage. Ms. Woomer then filed a referral with Adult Protective Services.[5]

Separately, MMBH Director of Nursing, Cheryl Williams, filed a patient grievance form on behalf of M.C. As a result, Mr. Richards assigned Ms. Woomer and Ms.

---

[4] Mr. Bailey explains that the video skips seconds at a time and people appear to move in a "stop-and-go manner."

[5] Mr. Bailey's complaint avers, at paragraph 47, that there is no evidence that Adult Protective Services ("APS") ever investigated the incident; however, his complaint also states, at paragraph 177, that around August 6, 2019, he received a letter from APS reflecting that they had "concluded their investigation and exonerate[ed] him of any physical abuse related to the incident of January 7, 2019."

Shields to investigate the incident. By letter dated January 17, 2019, MMBH advised Mr. Bailey that his employment was suspended pending an official investigation of the January 7 incident. The investigation consisted of Ms. Woomer and Ms. Shields viewing the security video and interviewing M.C. and Ms. Menchaca. The interview of M.C. was not recorded. Neither Mr. Bailey nor patient L.M. were interviewed. Ten other people visible in the security video also were not interviewed. Based upon the official investigation, Ms. Woomer's subsequent report concluded that the allegations of physical abuse against Mr. Bailey were substantiated. The report failed to relate M.C.'s history of self-harm and self-mutilation, or that the incident began when M.C. punched a wall and attempted to bite himself.

Around March 6, 2019, a predetermination conference was held.[6] Although Mr. Richards did not personally attend the conference, he recommended to DHHR that Mr. Bailey's employment be terminated, and DHHR approved the recommendation. In a letter dated March 11, 2019, Mr. Richards advised Mr. Bailey that his employment with MMBH was terminated due to his physical abuse of a patient. Mr. Bailey then filed a grievance with the West Virginia Public Employees Grievance Board ("Grievance Board"). On April

---

[6] We presume this was a predetermination conference pursuant to the Administrative Rules of the West Virginia Division of Personnel. *See* W. Va. Code St. R. § 143-1-12.2.a.1 (requiring an appointing authority or its designee to "meet with the employee in a predetermination conference and advise the employee of the contemplated dismissal").

18, 2019, Mr. Bailey received notice that Ms. Shields had filed a complaint against him with the West Virginia Board of Nursing, triggering proceedings against his nursing license,[7] and he also received a notice from the West Virginia Department of Personnel in July 2019 that he was no longer eligible for potential public employment in the State of West Virginia.

Mr. Bailey proceeded through the grievance process to a level three hearing before an administrative law judge,[8] held on June 10 and 17 of 2019. On November 19, 2019, the Grievance Board issued its decision that reinstated Mr. Bailey to his position at MMBH with back pay, interest, and restoration of all benefits. The Grievance Board also directed that the January 7 incident be removed from Mr. Bailey's personnel file as though it never occurred. MMBH did not appeal the Grievance Board's final ruling.

Meanwhile, Mr. Richards, Ms. Shields, MMBH, and Ms. Woomer and/or LAWV made a report to MFCU, causing it to investigate the January 7 incident. By letter

---

[7] In April 2021, the Board of Nursing notified Mr. Bailey that it had dismissed the complaint filed by Ms. Shields and would take no action against his nursing license.

[8] The West Virginia Public Employee Grievance Procedure levels are set out at W. Va. Code § 6C-2-4. Level three, the final grievance procedure level, is a hearing before an administrative law judge. *See* W. Va. Code § 6C-2-4(c). A final decision by an administrative law judge is enforceable and appealable on certain grounds. *See* W. Va. Code § 6C-2-5.

dated October 4, 2019, MFCU "demanded" that Mr. Bailey submit to a "custodial interrogation," as characterized by Mr. Bailey. The "interrogation" occurred on December 2, 2019, and was conducted by MFCU employees Nathan R. Lyle and Erin Young, and David Holtzapfel, a lawyer working for the West Virginia Attorney General's Office. Mr. Bailey was not advised of his *Miranda* rights. Following the "interrogation," Mr. Lyle authored a report about the January 7, 2019 incident and concluded that Mr. Bailey had abused, assaulted, and battered M.C. Mr. Lyle referred the matter to the Cabell County Prosecuting Attorney's Office. Mr. Bailey alleges that Mr. Lyle made the referral despite his knowledge that Mr. Bailey had been "exonerated" of any wrongdoing by the Grievance Board. The Prosecuting Attorney's Office filed criminal charges against Mr. Bailey, and a magistrate found probable cause to believe that Mr. Bailey had committed the offenses.[9] As a result of these events, immediately after the Grievance Board reinstated Mr. Bailey to his position, MMBH suspended him because the criminal complaint had been filed involving the same, January 7, incident. On March 2 2021, the Cabell County Prosecuting Attorney dismissed all charges against Mr. Bailey, without prejudice.[10]

---

[9] Mr. Bailey's complaint does not specify what the charges were, but the appendix record reflects that Mr. Bailey was charged with misdemeanor assault, two counts of misdemeanor abuse or neglect of an incapacitated adult, and misdemeanor battery.

[10] While the charges were dismissed without prejudice, the circuit court found that the statute of limitations for the charges had since expired, which rendered the dismissal final.

On February 25, 2022, Mr. Bailey filed a civil complaint against DHHR, MMBH, Ms. Shields, Mr. Richards, MFCU, Mr. Lyle, Ms. Woomer, Ms. Stone, and LAWV in the Circuit Court of Kanawha County. Pertinent to this appeal, Mr. Bailey asserted civil rights violations pursuant to 42 U.S.C. § 1983 based on unreasonable and unlawful seizure of the person, malicious prosecution, and violation of the Whistle-Blower Law, West Virginia Code §§ 6C-1-1 to -8. MFCU and Mr. Lyle filed a motion to dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, asserting qualified immunity, absolute prosecutorial immunity, and challenging Mr. Bailey's claims. The circuit court denied the motion, and Petitioners filed a petition for writ of prohibition, assigned number 22-779 by this Court, in which they claim the circuit court exceeded its legitimate powers by denying their motion to dismiss with respect to Mr. Bailey's § 1983 and whistle-blower claims. MFCU and Mr. Lyle filed a separate petition for appeal, assigned number 22-781 by this Court, in which they sought review of the circuit court's denial of their motion to dismiss based upon their claims of immunity from Mr. Bailey's § 1983 and malicious prosecution claims. We consolidated these two proceedings for purposes of oral argument, consideration, and decision.

## II.

## PETITION FOR WRIT OF PROHIBITION

Before discussing the merits of Petitioners' arguments in case 22-779, we review the applicable standard for issuing a writ of prohibition. We separately address

8

whether the circuit court should be prohibited from enforcing its order denying Petitioners' motion to dismiss regarding Mr. Bailey's § 1983 claims and his whistle-blower claim.

### A. Standard for Issuance of Writ

Petitioners invoke this Court's original jurisdiction in prohibition claiming that the circuit court erred and exceeded its legitimate powers by denying their motion to dismiss Mr. Bailey's § 1983 and whistle-blower claims. *See* Syl. pt. 2, *State ex rel. Peacher v. Sencindive*r, 160 W. Va. 314, 233 S.E.2d 425 (1977) ("A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W. Va. Code*, 53-1-1."). Notably, "when a motion to dismiss has been denied by a circuit court, a party may seek relief through a petition for a writ of prohibition." *State ex rel. Devono v. Wilmoth*, 248 W. Va. 654, ___, 889 S.E.2d 736, 742 (2023). *See also State ex rel. Skyline Corp. v. Sweeney*, 233 W. Va. 37, 40, 754 S.E.2d 723, 726 (2014) ("When the request for extraordinary relief concerns a circuit court's denial of a motion to dismiss, we consider the matter as a petition for a writ of prohibition.").

The standard applied in this case, where Petitioners contend that the circuit court exceeded its legitimate powers, is well established.

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded

9

its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).[11] Finally, we note that,

[w]here prohibition is sought to restrain a trial court from the abuse of its legitimate powers, rather than to challenge its jurisdiction, the appellate court will review each case on its own particular facts to determine whether a remedy by appeal is both available and adequate, and only if the appellate court determines that the abuse of powers is so flagrant and violative of petitioner's rights as to make a remedy by appeal inadequate, will a writ of prohibition issue.

Syl. pt. 2, *Woodall v. Laurita*, 156 W. Va. 707, 195 S.E.2d 717 (1973).

---

[11] As a preliminary matter, Mr. Bailey argues that Petitioners have failed to meet the standard for the issuance of a writ of prohibition. He reasons that because the *Hoover* factors are joined with the conjunction "and," they all are required but have not been met by Petitioners. This argument ignores the plain language of *Hoover*, which expressly states that "all five factors need not be satisfied." Syl. pt. 4, in part, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). Therefore, we find Mr. Bailey's argument unpersuasive.

## B. Discussion

**1. § 1983 Claims Against MFCU and Mr. Lyle.** 42 U.S.C. § 1983 "creates a remedy for violation of federal rights committed by persons acting under color of state law." *State v. Chase Sec., Inc.*, 188 W. Va. 356, 359, 424 S.E.2d 591, 594 (1992) (commenting that "litigation directed at state officials is most frequently brought pursuant to 42 U.S.C. § 1983"). Petitioners sought dismissal of Mr. Bailey's § 1983 claims against them, asserting that neither is a "person" under 42 U.S.C. § 1983. The circuit court denied the motion.

Before this Court, Petitioners first argue that the circuit court committed clear legal error and exceeded the scope of its authority by finding that Mr. Bailey's § 1983 claims could be maintained against a state agency and an employee of a state agency who was acting in his official capacity.

There are two elements to a § 1983 claim: "'[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by *a person* acting under color of state law.'" *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (emphasis added) (quoting *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55, 101 L. Ed. 2d 40 (1988)). This Court has similarly held that,

11

[b]ecause Title 42, U.S.C.A. § 1983 (1979) does not create substantive rights, but rather provides a remedy for pre-existing rights, all claims under this section must allege a specific violation of the constitution or "laws" of the United States. [To] recover damages under § 1983, a plaintiff must show that (1) the conduct complained of was committed by *a person* acting under color of state law; and (2) [the] conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States.

Syl. pt. 4, *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996) (emphasis added). Thus, "a claim can only be brought against a 'person' under 42 U.S.C. § 1983." *State ex rel. W. Va. Div. of Corr. & Rehab. v. Ferguson*, 248 W. Va. 471, ___ n.11, 889 S.E.2d 44, 55 n.11 (2023). In *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989), the Supreme Court of the United States expressly held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* at 71, 109 S. Ct. at 2312, 105 L. Ed. 2d 45.

In denying the motion to dismiss Mr. Bailey's § 1983 claims against MFCU, the circuit court reasoned that "[w]hile Defendant MFCU may not be a 'person,' it is vicariously liable for the acts or omissions of its employee, Defendant Lyle." The circuit court relied generally on *West Virginia Regional Jail and Correctional Facility Authority v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014), but it failed to analyze the opinion's relevance to a § 1983 claim. Had the court done so, the inapplicability of *A.B.* to § 1983 claims would have been apparent. In fact, the *A.B.* Court made clear that the complaint "expressly asserted" that the plaintiff was "making *no claims* against the [defendant state

12

agency] under Section 1983." *A.B.*, 234 W. Va. at 499, 766 S.E.2d at 758 (emphasis added). Contrary to the circuit court's conclusion, *A.B.* does not stand for the proposition that a government agency may, in a § 1983 action, be held vicariously liable for the acts or omissions of its employee.

The United States Supreme Court has plainly declared that "vicarious liability is inapplicable to . . . § 1983 suits[;] . . . the plaintiff in [such] a suit . . . must plead that each Government-official defendant, through his own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978)).

Because Mr. Bailey's § 1983 claims against MFCU are not sustainable as it is not a person, and MFCU cannot be vicariously liable for Mr. Lyle's alleged violations of § 1983, Mr. Bailey can prove no set of facts that would entitle him to relief from MFCU under § 1983 and dismissal of those claims was proper. *See* Syl. pt. 3, *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 236 S.E.2d 207 (1977) ("The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). The circuit court plainly erred by denying

13

Petitioners' motion to dismiss Mr. Bailey's § 1983 claims against MFCU and Petitioners are entitled to a writ prohibiting the circuit court from allowing these claims to proceed.

Petitioners also sought dismissal of the § 1983 claims against Mr. Lyle, arguing that he was improperly sued in his official capacity and, therefore, also is not a "person" for § 1983 purposes. Mr. Bailey responds that he did not sue Mr. Lyle only in his official capacity, but also sued him in his individual capacity. In denying Petitioners' motion to dismiss the § 1983 claims as to Mr. Lyle, the circuit court reasoned that the question of whether Mr. Lyle was acting in his official capacity was "a question of fact and cannot be the subject of a Motion to Dismiss." However, to the extent that Mr. Bailey asserted § 1983 claims against Mr. Lyle in his official capacity, the claims should have been dismissed.

> [S]tate officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself.

*Will*, 491 U.S. at 71, 109 S. Ct. at 2312, 105 L. Ed. 2d 45 (citing *Brandon v. Holt*, 469 U.S. 464, 471, 105 S. Ct. 873, 877, 83 L. Ed. 2d 878 (1985). Instead,

> [a] government-official defendant can be held liable only for his or her own misconduct. Therefore, to succeed on a claim of an alleged constitutional violation under United States Code title 42, section 1983, a plaintiff must prove that each government-official defendant, through that official's own individual actions, has personally and directly violated the Constitution, and that such violation caused or contributed to the plaintiff's injuries.

14

Syl. pt. 3, *Vinson v. Butcher*, 244 W. Va. 144, 851 S.E.2d 807 (2020). Accordingly, Mr. Bailey can prove no set of facts that would entitle him to relief from Mr. Lyle acting in his official capacity pursuant to § 1983 and the circuit court should have dismissed those claims. *See* Syl. pt. 3, *Chapman*, 160 W. Va. 530, 236 S.E.2d 207. Therefore, Petitioners are also entitled to the requested writ of prohibition relating to Mr. Bailey's § 1983 claims against Mr. Lyle in his official capacity. We need not address whether Mr. Bailey properly asserted § 1983 claims against Mr. Lyle in his individual capacity, because, as we explain more thoroughly below in our discussion of Petitioners' appeal in number 22-781, Mr. Lyle is entitled to qualified immunity for those claims as a matter of law.

**2. Whistle-Blower Claim Against Mr. Lyle.** In denying Petitioners' motion to dismiss, the circuit court determined that Mr. Bailey could assert a claim against Mr. Lyle under the Whistle-Blower Law, W. Va. Code §§ 6C-1-1 to -8, even though Mr. Lyle and Mr. Bailey worked for different state agencies. In reaching this conclusion, the circuit court relied upon the definition of the term "employer" in the Whistle-Blower Law.

The Whistle-Blower Law prohibits an employer from making certain adverse employment changes in retaliation for an employee's protected conduct. According to the Whistle-Blower Law,

> (a) No employer may discharge, threaten, or otherwise discriminate or retaliate against an employee *by changing the employee's compensation, terms, conditions, location, or*

15

*privileges of employment* because the employee, acting on his or her own volition, or a person acting on behalf of or under the direction of the employee, makes a good faith report, or is about to report, verbally or in writing, to the employer or appropriate authority, an instance of wrongdoing or waste.

(b) No employer may discharge, threaten, or otherwise discriminate or retaliate against an employee *by changing the employee's compensation, terms, conditions, location, or privileges of employment* because the employee is requested or subpoenaed by an appropriate authority to participate in an investigation, hearing, or inquiry held by an appropriate authority or in a court action.

(c) No employer may deny a whistle-blower covered by the civil service system, because of his or her status or actions as a whistle-blower, a promotion or other increase in compensation that the whistle-blower otherwise would have received.

W. Va. Code § 6C-1-3 (eff. 2020) (emphasis added).[12] As used in this statute, the term "'employer' means a person supervising one or more employees, including the employee in question, a superior of that supervisor, or an agent of a public body." W. Va. Code § 6C-1-2(c) (eff. 1988).

In seeking dismissal of this claim, Petitioners argued that Mr. Lyle was not Mr. Bailey's employer and, therefore, could not properly be the subject of Mr. Bailey's whistle-blower claim. The circuit court disagreed and found that Mr. Lyle fell within the

---

[12] The version of this statute in effect at the time relevant to Mr. Bailey's claim was enacted in 1988; however, because the newer version contains the same pertinent language, we refer to it in our analysis.

16

Whistle-Blower Law's definition of "employer" because he was "an agent of a public body," i.e., MFCU. W. Va. Code § 6C-1-2(c). Petitioners contend this conclusion was in error, because Mr. Lyle was not Mr. Bailey's employer. Mr. Bailey argues, without authority, that the circuit court correctly denied Mr. Lyle's motion to dismiss the whistle-blower claim, because Mr. Lyle was a state employee who acted in concert with hospital employee/defendants Ms. Shields, who was Mr. Bailey's supervisor at MMBH, and Mr. Richards, MMBH's CEO. Echoing the circuit court's findings, Mr. Bailey also contends that Mr. Lyle satisfies the whistle-blower definition of employer because he is an "agent of a public body." *Id.* Mr. Bailey reasons that the Whistle-Blower Law is designed to protect state employees and should be liberally construed.

Our resolution of this issue requires us to analyze the Whistle-Blower Law. "'Interpreting a statute . . . presents a purely legal question subject to *de novo* review.'" Syl. pt. 2, *Freeland v. Marshall*, No. 22-0109, ___ W. Va. ___, ___ S.E.2d ___, 2023 WL 6804937 (W. Va. Oct. 16, 2023) (quoting Syl. pt. 1, in part, *Appalachian Power Co. v. State Tax Dep't*, 195 W. Va. 573, 466 S.E.2d 424 (1995)." Importantly, "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). Obviously, "[a] statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992). However, "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute

17

should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

We find the definition of "employer" as used in the Whistle-Blower Law to be ambiguous in its reference to "an agent of a public body." W. Va. Code § 6C-1-2(c). A literal application of this phrase would mean that any agent of a public body may be liable under the Whistle-Blower Law, even when the agent works for a completely separate agency from the aggrieved employee and has no supervisory authority over that employee. We do not believe such an outcome corresponds with the legislative intent for the Whistle-Blower Law. *See Hutchison*, 198 W. Va. at 150, 479 S.E.2d at 660 (recognizing that "one of the foremost canons of statutory construction states: 'The plain meaning of legislation should be conclusive, *except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters*.'" (emphasis added) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S. Ct. 1026, 1031, 103 L Ed. 2d 290 (1989))).

First, the definition of employer specifically lists persons who have supervisory authority over the employee making a whistle-blower claim: "a person *supervising* one or more employees, including the employee in question, a superior of that supervisor . . . ." W. Va. Code § 6C-1-2 (c). It stands to reason that the inclusion of "an

agent of a public body" at the end of this list is intended by the Legislature to also be someone with supervisory authority over the subject employee. *See* Syl. pt. 4, *Wolfe v. Forbes*, 159 W. Va. 34, 217 S.E.2d 899 (1975) ("It is a fundamental rule of construction that, in accordance with the maxim *noscitur a sociis*, the meaning of a word or phrase may be ascertained by reference to the meaning of other words or phrases with which it is associated. Language, although apparently general, may be limited in its operation or effect where it may be gathered from the intent and purpose of the statute that it was designed to apply only to certain persons or things, or was to operate only under certain conditions.").

Further evidence of the intended meaning of "employer" may be gleaned from the type of conduct prohibited by the Whistle-Blower Law. *See* Syl. pt. 1, *State ex rel. Hall v. Schlaegel*, 202 W. Va. 93, 502 S.E.2d 190 (1998) ("Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." (quotations and citation omitted))." Under its plain language"[n]o employer may discharge, threaten, or otherwise discriminate or retaliate against an employee *by changing the employee's compensation, terms, conditions, location, or privileges of employment*," based upon the employee's protected activity. W. Va. Code § 6C-1-3(a) & (b) (emphasis added). Thus, the prohibited conduct plainly refers to changes that could only be made by someone with supervisory authority, or perhaps administrative authority, i.e., a superior of the supervisor as included in the definition of employer. The language "an agent of a public body," simply is not intended

19

to refer broadly to employees of other state agencies that have no such supervisory authority. W. Va. Code § 6C-1-2(c). Viewed properly, it identifies someone who may not technically be a supervisor, but who, through some agency relationship, has obtained supervisory authority over the subject employee.

The absence of supervisory authority was a factor considered by this Court in *State ex rel. Grant County Commission v. Nelson*, 244 W. Va. 649, 856 S.E.2d 608 (2021), when it concluded that a county commission was not liable for a whistle-blower claim by an employee of a hospital it owned. The *Nelson* Court explained that, although the county commission owned the hospital, its administration and management authority, including the power to make employment decisions, was held by the hospital board of trustees. For this reason, the *Nelson* Court concluded that the county commission was not the employer of hospital employees,

> the Commission has no authority to make decisions regarding the Hospital's employees and, thus, is not the [plaintiff's] employer . . . . Therefore, for purposes of the Whistle-Blower Law and the Human Rights Act, we hold that a county commission, which owns a hospital pursuant to West Virginia Code section 7-3-14, is not the employer of individuals who work at the hospital. . . .

*Nelson*, 244 W. Va. at 656-57, 856 S.E.2d at 615-16 (footnote omitted). Applying this reasoning here, it is clear that Mr. Lyle, an MFCU employee, had no authority to make employment decisions affecting Mr. Bailey. Mr. Bailey has not alleged that Mr. Lyle had any authority to change his compensation, terms, conditions, location, or privileges of

20

employment.[13] Therefore, Mr. Bailey's complaint has failed to assert a whistle-blower claim against Mr. Lyle upon which relief can be granted. *See* W. Va. R. Civ. P. 12(b)(6). *See also Fass v. Nowsco Well Serv., Ltd*., 177 W. Va. 50, 52, 350 S.E.2d 562, 563 (1986) (stating that a "complaint must set forth enough information to outline the elements of a claim or permit inferences to be drawn that these elements exist"). The circuit court clearly erred in finding that Mr. Bailey sufficiently asserted a whistle-blower claim against Mr. Lyle; therefore, Mr. Lyle is entitled to the requested writ of prohibition on this ground. *See* Syl. pt. 4, *Hoover*, 199 W. Va. 12, 483 S.E.2d 12.

Because we find that the circuit court committed clear error of law in failing to dismiss Mr. Bailey's § 1983 claims against MFCU and Mr. Lyle in his official capacity, and Mr. Bailey's whistle-blower claim against Mr. Lyle, we grant the requested writ of prohibition.

---

[13] In his complaint, Mr. Bailey alleged, in pertinent part, that Mr. Lyle deliberately made false allegations against him and, while aided and abetted by other defendants who are not part of this appeal, conducted a flawed and fraudulent investigation into the false allegations, all as reprisal for Mr. Bailey's testimony in another employee's grievance proceeding against MMBH. Mr. Bailey further alleged that, because of this wrongdoing, he suffered an adverse employment action, a bogus complaint against his nursing license, and was the subject of a bogus criminal complaint.

# III.

## APPEAL OF DENIAL OF IMMUNITY

On appeal in case number 22-781, Petitioners contend that the circuit court erred by finding they were not entitled to qualified immunity from Mr. Bailey's § 1983 claims alleging violations of his right to be free from unreasonable seizures of the person and from Mr. Bailey's state-law malicious prosecution claim. They additionally argue that the circuit court erred in concluding that they were not entitled to prosecutorial immunity as to Mr. Bailey's malicious prosecution claim.

### A. Standard of Review

The denial of a motion to dismiss is generally not immediately appealable; however, we have held that "[a] circuit court's denial of a motion to dismiss that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine." Syl. pt. 1, *W. Va. Bd. of Educ. v. Marple*, 236 W. Va. 654, 783 S.E.2d 75 (2015). We give plenary consideration to this appeal. *See* Syl. pt. 2, *W. Va. Div. of Corr. & Rehab. v. Robbins*, 248 W. Va. 515, 889 S.E.2d 88 (2023). When conducting our review, we are mindful that "[t]he purpose of a Rule 12(b)(6) motion [to dismiss] 'is to test the sufficiency of the complaint.' *Cantley v. Lincoln Cnty. Comm'n,* 221 W. Va. 468, 470, 655 S.E.2d 490, 492 (2007) (per curiam)." *WW Consultants, Inc. v. Pocahontas Cnty. Pub. Serv. Dist.*, 248 W. Va. 323, ___, 888 S.E.2d 823, 832-33 (2023). Furthermore,

[t]he circuit court, viewing all the facts in a light most favorable to the nonmoving party, may grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his[, her, or its] claim which would entitle him[, her, or it] to relief." Syl. pt. 3, in part, *Chapman v. Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977)[.]

*State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 776, 461 S.E.2d 516, 522 (1995) (footnote omitted).

### B. Discussion

**1. Qualified Immunity From § 1983 Claims.** We need not address MFCU's entitlement to qualified immunity from Mr. Bailey's § 1983 claims because we determined above that, as a matter of law, MFCU, a state agency, is not subject to a § 1983 suit. Accordingly, our discussion of qualified immunity from Mr. Bailey's § 1983 claims pertain only to Mr. Lyle in his individual capacity. After reviewing the standards for qualified immunity under federal law, we consider Mr. Bailey's claim based on Mr. Lyle's failure to provide *Miranda* warnings.[14] We then address Mr. Bailey's claim that he was placed at risk of losing his liberty due to Mr. Lyle's allegedly false report.

---

[14] "Law enforcement officers must provide *Miranda* warnings, pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), when a person is in custody and is interrogated." *State v. Delorenzo*, 247 W. Va. 707, 722, 885 S.E.2d 645, 660 (2022).

**a. Federal Qualified Immunity Standards.** We apply federal immunity law in addressing this issue. *See Ballard v. Delgado*, 241 W. Va. 495, 504, 826 S.E.2d 620, 629 (2019) ("[T]his Court's 'approach to matters concerning immunity historically has followed federal law . . . when . . . public officers are sued in state court for violations of federal civil rights pursuant to 42 U.S.C. § 1983.' *City of Saint Albans v. Botkins*, 228 W. Va. 393, 398, 719 S.E.2d 863, 868 (2011)."). The United States Supreme Court has explained that qualified immunity should be resolved at the earliest possible stage of litigation.

> Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815, 86 L. Ed. 2d 411 (1985) (emphasis deleted). Indeed, we have made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 640, n.2, 107 S. Ct. 3034, [3039 n.2,] 97 L. Ed. 2d 523 (1987). Accordingly, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589 (1991) *(per curiam)*.

*Pearson v. Callahan*, 555 U.S. 223, 231-32, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009).

We address two questions in analyzing federal qualified immunity:

> First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right. . . . Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue

was "clearly established" at the time of defendant's alleged misconduct.

*Id*. at 232, 129 S. Ct. at 815-16, 172 L. Ed. 2d 565 (2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001)). *Accord Robbins*, 248 W. Va. at ___, 889 S.E.2d at 97. While earlier opinions required these steps to be applied in order, the *Pearson* Court determined that flexibility was warranted, and the arrangement of the test should not be considered mandatory.

> On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

*Pearson*, 555 U.S. at 236, 129 S. Ct. at 818, 172 L. Ed. 2d 565. *Accord Robbins*, 248 W. Va. at ___ n.30, 889 S.E.2d at 97 n.30; *Ballard*, 241 W. Va. at 504 n.21, 826 S.E.2d at 629 n.21.

**b. § 1983 Claim Based on *Miranda* Violation.** Mr. Bailey's complaint alleges that Mr. Lyle violated Mr. Bailey's "rights under the Fourth Amendment . . . to be free from unreasonable seizures of the person," by conducting a custodial interrogation without advising him of his *Miranda* rights.

25

In denying Petitioners' motion to dismiss on qualified immunity grounds, the circuit court found that Mr. Lyle "conducted a custodial interrogation without providing Plaintiff with his *Miranda* rights," and summarily concluded that Mr. Lyle "has no immunity for such a violation" of Mr. Bailey's "legal and constitutional rights." Mr. Lyle contends that the circuit court's ruling is erroneous, and he is entitled to qualified immunity, because Mr. Bailey failed to allege deprivation of a constitutional right that may be remedied in a § 1983 suit. We agree.

The United States Supreme Court has found a defendant was entitled to qualified immunity from a § 1983 claim based on a failure to read *Miranda* warnings to an arrestee, explaining:

> Rules designed to safeguard a constitutional right, however, do not extend the scope of the constitutional right itself, just as violations of judicially crafted prophylactic rules do not violate the constitutional rights of any person. As we explained, we have allowed the Fifth Amendment privilege to be asserted by witnesses in noncriminal cases in order to safeguard the core constitutional right defined by the Self-Incrimination Clause—the right not to be compelled in any criminal case to be a witness against oneself.

*Chavez v. Martinez*, 538 U.S. 760, 772, 123 S. Ct. 1994, 2003-04, 155 L. Ed. 2d 984 (2003) (reversing lower court's denial of qualified immunity as to plaintiff's Fifth Amendment claim because alleged conduct did not violate Self-Incrimination Clause). *See also Vega v. Tekoh*, 597 U.S. ___, ___, 142 S. Ct. 2095, 2108, 213 L. Ed. 2d 479 (2022) (concluding

26

that "a violation of *Miranda* is not itself a violation of the Fifth Amendment" and there was "no justification for expanding *Miranda* to confer a right to sue under § 1983[.]").[15]

Based on this well-established precedent, the failure to provide *Miranda* rights is not a constitutional violation, and Mr. Bailey has failed to overcome qualified immunity because he failed to allege facts showing that Mr. Lyle's conduct violated a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001) (establishing that qualified immunity may only be overcome if the facts alleged "show the officer's conduct violated a constitutional right").

**c. § 1983 Claim Based on a Potential Loss of Liberty.** Mr. Bailey additionally asserted that Mr. Lyle conducted a false investigation and produced a false report "in violation" of Mr. Bailey's Fourth Amendment right "to be free from unreasonable seizures of the person." Factually, this claim appears to be based on the allegation that Mr. Lyle's purportedly false report caused Mr. Bailey to be the subject of a criminal investigation that "could lead to loss of his liberty." Mr. Bailey additionally alleged that he "was forced to turn himself in," but his complaint contains no facts indicating that he was arrested or taken into custody.

---

[15] Because we resolve this issue on the ground that the failure to provide *Miranda* warnings is not a constitutional violation actionable under § 1983, we do not address Mr. Bailey's claim that Mr. Lyle conducted a custodial interrogation.

The United States Supreme Court has explained that "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards." *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980). *See also California v. Hodari D.*, 499 U.S. 621, 626, 111 S. Ct. 1547, 1551, 113 L. Ed. 2d 690 (1991) ("An arrest requires *either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority."). Accordingly, the *Mendenhall* Court concluded that

> a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*Mendenhall*, 446 U.S. at 554-55, 100 S. Ct. at 1877, 64 L. Ed. 2d 497 (footnote omitted) (concluding that, absent evidence of the type described, "otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person"). Mr. Bailey has alleged no facts to show that Mr. Lyle restrained Mr. Bailey's freedom of movement by exerting "physical force or a show of authority." *Id*. at 553, 100 S. Ct. at 1877, 64 L. Ed. 2d 497. Although Mr. Bailey contends that he "was forced to turn himself in," he fails to allege facts to describe the event or provide any

28

context whatsoever. The bare allegation that Mr. Lyle's report "could lead to loss of [Mr. Bailey's] liberty" is patently insufficient to show a seizure. *Cf. United States v. Ley*, 876 F.3d 103, 108 (3d Cir. 2017) (stating "[l]ike this Court, the First, Second, and Seventh Circuits have determined that a summons requiring the appearance in court does not amount to a Fourth Amendment seizure," and collecting cases).[16] Mr. Bailey has failed to allege sufficient facts to show that Mr. Lyle's investigation and report amounted to an unconstitutional seizure. Because the complaint fails to properly allege violation of a constitutional right, Mr. Lyle is entitled to qualified immunity, and the circuit court erred in finding otherwise.

**2. State-Law Malicious Prosecution Claim.**[17] We begin by discussing the standards for qualified immunity in West Virginia and then determine whether the circuit

---

[16] *See also Bracken v. Manor Twp.*, No. 2:19cv185, 2023 WL 2664361, at *22 (W.D. Pa. Mar. 28, 2023) ("[T]o be sufficient to support a Fourth Amendment violation, a seizure must result in either pretrial custody or 'some onerous types of pretrial, non-custodial restrictions.' *DiBella*[ *v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005)]. And '[m]erely having to appear in court to answer charges does not qualify as a Fourth Amendment seizure.' *Roberts*[ *v. Caesar's Ent., Inc.*, 72 F. Supp. 3d 575, 581-82 (E.D. Pa. 2014)]").

[17] During oral argument before this Court, Mr. Bailey's counsel stated that Mr. Bailey has asserted malicious prosecution claims under state law as well as pursuant to § 1983. Because the circuit court addressed only Mr. Bailey's state-law malicious prosecution claim and Petitioners similarly address only the state-law malicious prosecution claim on appeal, we do not consider whether Mr. Lyle is qualifiedly immune from any § 1983 claim for malicious prosecution alleged by Mr. Bailey.

court erred by finding Petitioners were not entitled to qualified immunity from Mr. Bailey's malicious prosecution claim.

a. **Principles of State Law Qualified Immunity.** Like federal immunity, we have acknowledged that "[i]mmunities under West Virginia law are more than a defense to a suit in that they grant governmental bodies and public officials the right not to be subject to the burden of trial at all." *Hutchison*, 198 W. Va. at 148, 479 S.E.2d at 658. "The policy considerations driving such a rule are straightforward: public servants exercising their official discretion in the discharge of their duties cannot live in constant fear of lawsuits, with the concomitant costs to the public servant and society." *Id*. Thus, "[a] public official or State agency may claim to be qualifiedly immune from suit only when 'the [governmental] acts or omissions which give rise to the suit . . . involve . . . discretionary governmental functions.'" *Robbins*, 248 W. Va. at ___, 889 S.E.2d at 97 (quoting Syl. pt. 10, in part, *A.B.*, 234 W. Va. 492, 766 S.E.2d 751). When discretionary acts are the basis for a claim of liability, qualified immunity applies unless clearly established and reasonably known rights or laws have been violated, or the subject conduct is fraudulent, malicious, or oppressive:

> To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or

oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability.

Syl. pt. 11, *A.B.*, 234 W. Va. 492, 766 S.E.2d 751.[18] Finally, a claim implicating qualified immunity must meet a heightened pleading standard. *See Hutchison*, 198 W. Va. at 149, 479 S.E.2d at 659 ("We believe that in civil actions where immunities are implicated, the trial court must insist on heightened pleading by the plaintiff."). However, the *Hutchison* Court cautioned that "[a] plaintiff is not required to anticipate the defense of immunity in his complaint." *Id.* at 150, 479 S.E.2d at 660 (citing *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 1923-24, 64 L. Ed. 2d 572 (1980)). Thus, when the pleadings are insufficient to overcome a defendant's claim of governmental immunity, then, before making a dispositive ruling, the circuit court should first direct a plaintiff to file a short and plain statement of his complaint that rests on more than conclusions alone, pursuant to Rule 12(e) of the West Virginia Rules of Civil Procedure. *Id.* The court may also require a plaintiff to file a reply in accordance with Civil Procedure Rule 7(a) that is tailored to respond to the defendant's assertion of statutory or qualified immunity. *Id.*

---

[18] *See also* Syl. pt. 7, *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014) ("'In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1 *et seq*., and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer.' Syl. Pt. 6, *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995).").

**b. Qualified Immunity for Malicious Prosecution.**[19] To overcome Petitioners' entitlement to qualified immunity, Mr. Bailey contends that the malicious prosecution was fraudulent, malicious, or oppressive. *See* Syl. pt. 11, in part, *A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (holding, in relevant part, that qualified immunity may be overcome when governmental official's discretionary functions are fraudulent, malicious, or oppressive).[20] Petitioners argue that Mr. Bailey has failed to satisfy the heightened pleading standard required to overcome qualified immunity for this claim because he failed

---

[19] Mr. Bailey has asserted a direct claim for malicious prosecution against MFCU, a state agency. Therefore, in addressing this issue, we must assume that a state agency is capable of acting with the malice necessary to support the claim. *But see Morton v. Chesapeake & Ohio Ry. Co.*, 184 W. Va. 64, 68, 399 S.E.2d 464, 468 (1990) (per curiam) ("Because a corporation does not exist as a living entity, the actions or omissions of its employees or agents can form the basis for a corporation's liability [for malicious prosecution] under the doctrine of respondeat superior."); Syl. pt. 1, *Show v. Mount Vernon Farm Dairy Prods.*, 125 W. Va. 116, 23 S.E.2d 68 (1942) ("A corporation is liable for a malicious prosecution by its agent, acting within the scope of his employment and in furtherance of his company's business, notwithstanding the company may not have expressly authorized or ratified his act." (quotations and citations omitted)); Syl. pt. 1, *Meadows v. Corinne Coal & Land Co.*, 115 W. Va. 522, 177 S.E. 281 (1934) (same); Syl. pt. 4, *Lyons v. Davy-Pocahontas Coal Co.*, 75 W. Va. 739, 84 S.E. 744 (1915) ("A coal mining corporation is liable for a malicious prosecution procured to be made by its superintendent acting in furtherance of its business."); Syl. pt. 1, *Fetty v. Huntington Loan Co.*, 70 W. Va. 688, 74 S.E. 956 (1912) ("A corporation is liable for a malicious prosecution by its agent, acting within the scope of his employment and in furtherance of his company's business, notwithstanding the company may not have expressly authorized or ratified his act."). While we assume, for purposes of this interlocutory appeal addressing only Petitioners' entitlement to qualified immunity, that a state agency may be directly liable for malicious prosecution, we make no such conclusion.

[20] *See also W. Va. Div. of Nat. Res. v. Dawson*, 242 W. Va. 176, 190, 832 S.E.2d 102, 116 (2019) ("[T]his Court has continually and consistently held that one way to defeat qualified immunity is by alleging that the acts or omissions of a public official or employee were fraudulent, malicious, or oppressive.").

to plead sufficient facts supporting his allegation that their conduct was fraudulent and malicious. We agree. Mr. Bailey's lengthy complaint is filled with conclusory statements about Petitioners' actions being fraudulent, malicious, and oppressive in providing a "false" report to the to the Cabell County Prosecuting Attorney. The only arguably factual allegations to support those statements are that the report was submitted to the Cabell County Prosecutor after the Grievance Board had "cleared" Mr. Bailey, and that Mr. Lyle knew or should have known of the Grievance Board's decision. The complaint is devoid of any specific facts regarding Mr. Lyle's investigation or the resulting report and any factual basis for Mr. Lyle's alleged knowledge of the unreliability of the investigation performed by defendants Woomer and LAWV.

Because Mr. Bailey's complaint failed to adequately allege facts supporting his malicious prosecution claim against Petitioners, the circuit court should order Mr. Bailey to file a short and plain statement of his complaint that rests on more than conclusions and may insist on a reply tailored to respond to Petitioners' assertion of qualified immunity with respect to his claim of malicious prosecution. *See Hutchison*, 198 W. Va. at 150, 479 S.E.2d at 660 (commenting that, when immunities are implicated "the trial court should first demand that a plaintiff file . . . 'a short and plain statement of his complaint . . . that rests on more than conclusion alone,'" and encouraging the circuit court to "insist that the plaintiff file a reply tailored to an answer pleading the defense of statutory or qualified immunity" (quoting *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995)).

33

Furthermore, this Court has held that,

> [i]f the plaintiff identifies a clearly established right or law which has been violated by the acts or omissions of the State, its agencies, officials, or employees, or can otherwise identify fraudulent, malicious, or oppressive acts committed by such official or employee, *the court must determine whether such acts or omissions were within the scope of the public official or employee's duties, authority, and/or employment.* To the extent that such official or employee is determined to have been acting outside of the scope of his duties, authority, and/or employment, the State and/or its agencies are immune from vicarious liability, but the public employee or official is not entitled to immunity in accordance with *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992) and its progeny. If the public official or employee was acting within the scope of his duties, authority, and/or employment, the State and/or its agencies may be held liable for such acts or omissions under the doctrine of *respondeat superior* along with the public official or employee."

Syl. pt. 12, *A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (emphasis added). In ruling on Petitioners' qualified immunity from Mr. Bailey's malicious prosecution claim, the circuit court erroneously failed to analyze whether Mr. Lyle was acting within the scope of his employment. Such an analysis must be conducted to determine whether MFCU is immune from vicarious liability for Mr. Lyle's conduct.

As explained above, we find the circuit court erred in its ruling addressing Petitioners' assertion of qualified immunity from Mr. Bailey's claim for malicious prosecution. We reverse the circuit court's qualified immunity ruling on this issue and remand with directions that the circuit court require Mr. Bailey to file a short and plain

34

statement of his complaint that rests on more than conclusions, or submit a reply tailored to respond to Petitioners' assertion of qualified immunity. We further instruct the court to determine whether MFCU is entitled to qualified immunity from vicarious liability for Mr. Lyle's alleged malicious prosecution.

**3. Prosecutorial Immunity From State Law Malicious Prosecution Claim.** As their last assignment of error, Petitioners contend that the circuit court erred by failing to dismiss Mr. Bailey's malicious prosecution claim based on prosecutorial immunity. They reason that the circuit court's finding that they procured Mr. Bailey's prosecution required a corresponding finding that they acted as prosecutors and are, therefore, entitled to prosecutorial immunity. This argument misconstrues prosecutorial immunity and adopting Petitioners' position would abolish malicious prosecution because procurement is one of its elements and, under Petitioners' theory, a finding of procurement would always entitle an actor to absolute prosecutorial immunity.

Prosecutorial immunity is absolute immunity afforded to prosecutors when they are engaged in functions associated with the judicial process:

> Prosecutors enjoy absolute immunity from civil liability for prosecutorial functions such as, initiating and pursuing a criminal prosecution, presenting a case at trial, and other conduct that is intricately associated with the judicial process . . . It has been said that absolute prosecutorial immunity cannot be defeated by showing that the prosecutor acted wrongfully or even maliciously, or because the criminal

35

defendant ultimately prevailed on appeal or in a habeas corpus proceeding.

Louis J. Palmer, Jr. & Robin J. Davis, *Litig. Handbook on W. Va. Rules of Civ. Proc.*, § 8(c), at 243-44 (5th ed. 2017) (footnotes omitted). This absolute immunity attaches only to prosecutors' functions related to the judicial process. When claims involve a prosecutor's functions that are not closely tied to the judicial process, such as their investigatory or administrative functions, they are entitled only to qualified, not absolute, immunity. *See id.* at 244 ("The absolute immunity afforded to prosecutors attaches to the functions they perform, and not merely to the office. Therefore, it has been recognized that a prosecutor is entitled only to qualified immunity when performing actions in an investigatory or administrative capacity." (footnote omitted)). *Accord Jarvis v. W. Va. State Police*, 227 W. Va. 472, 478 n.5, 711 S.E.2d 542, 548 n.5 (2010); *Mooney v. Frazier*, 225 W. Va. 358, 370 n.12, 693 S.E.2d 333, 345 n.12 (2010). *See also Dababnah v. Keller-Burnside*, 208 F.3d 467, 470 (4th Cir. 2000) ("A prosecutor enjoys absolute immunity for prosecutorial functions 'intimately associated with the judicial phase of the criminal process.' *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S. Ct. 984, 995, 47 L. Ed. 2d 128 (1976).").[21]

---

[21] Stated another way,

[t]o determine whether an act is so "intimately" associated with the judicial phase that it warrants absolute immunity, courts take a "functional approach," *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S. Ct. 2606, [2613,] 125 L. Ed. 2d 209 (1993), looking to the "nature of the function performed" and not the

Prosecutors have been afforded absolute immunity for their functions connected to the judicial phase of criminal proceedings,

> because, among other things, suits against prosecutors for initiating and conducting prosecutions "could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate," [*Imbler v. Pachtman*, 424 U.S. 409, 425, 96 S. Ct. 984, 992, 47 L. Ed. 2d 128 (1976)]; lawsuits would divert prosecutors' attention and energy away from their important duty of enforcing the criminal law, *ibid.*; prosecutors would have more difficulty than other officials in meeting the standards for qualified immunity, *ibid.*; and potential liability "would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system," *id.*, at 427-428[, 96 S. Ct. at 993-94, 47 L. Ed. 2d 128]. The Court also noted that there are other checks on prosecutorial misconduct, including the criminal law and professional discipline, *id.*, at 429[, 96 S. Ct. at 994, 47 L. Ed. 2d 128].

*Burns v. Reed*, 500 U.S. 478, 485-86, 111 S. Ct. 1934, 1939, 114 L. Ed. 2d 547 (1991).

---

> "identity of the actor who performed it," [*Nero v. Mosby*, 890 F.3d 106, 118 (4th Cir. 2018)] (quoting [*Buckley v. Fitzsimmons*, 509 U.S. at 269, 113 S. Ct. at 2613, 125 L. Ed. 2d 209]. Even a prosecutor, that is, will be entitled only to qualified immunity, rather than absolute immunity, if she is performing a function that is not tied to the judicial phase of the process. *Buckley*, 509 U.S. at 273, 113 S. Ct. [at 2616, 125 L. Ed. 2d 209].

*Annappareddy v Pascale*, 996 F.3d 120, 139 (4th Cir. 2021).

Some courts have found officials who are not prosecutors may be entitled to prosecutorial immunity, but only for activities that equate with a prosecutor's functions related to the judicial process. *See, e.g.*, *Smith v. Hatcher*, 516 F. Supp. 3d 1369 (S.D. Ga. 2021) (finding case manager entitled to prosecutorial immunity where claims stemmed entirely from case manager's function as a legal advocate, i.e., assisting in prosecution and constructing a case for the prosecution); *Golian v. New York City Admin. for Child. Servs*., 282 F. Supp. 3d 718, 726 (S.D.N.Y. 2017) (acknowledging that child services attorneys are entitled to prosecutorial immunity for functions analogous to a prosecutor). However,

> there is a material difference between investigative functions normally performed by an investigator or police officer and the prosecutorial functions of filing and maintaining criminal charges. Consequently, . . . prosecutorial immunity does not extend to an investigator whose conduct is not intimately involved with the initiation and maintenance of criminal charges.

*Stresemann v. Jesson*, 868 N.W.2d 32, 35 (Minn. 2015). Furthermore, "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burn*s, 500 U.S. at 486, 111 S. Ct. at 1939, 114 L. Ed. 2d 547. "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Id*. at 486-87, 111 S. Ct. at 1939, 114 L. Ed. 2d 547.

Here, Petitioners have failed to meet their burden of showing that they seek immunity for performing functions equal to those of a prosecutor intimately involved in

38

the judicial phase of a criminal proceeding, instead relying on the circuit court's general statement that they procured Mr. Bailey' indictment. Accordingly, we find no error in the circuit court's denial of prosecutorial immunity.

## IV.

## CONCLUSION

For the reasons explained in this opinion, in case number 22-779, we grant the requested writ of prohibition as to MFCU, and to Mr. Lyle to the extent Mr. Bailey's § 1983 claims were asserted against Mr. Lyle in his official capacity, because a § 1983 claim may not be sustained against a state agency or its official acting in his or her official capacity. Furthermore, because Mr. Lyle had no authority to make employment decisions affecting Mr. Bailey's employment, and, therefore, was not his employer as defined in the Whistle-Blower Law, Mr. Bailey's whistle-blower claim against him cannot survive Petitioners' motion to dismiss.

In case number 22-781, we reverse the circuit court's denial of qualified immunity to Mr. Lyle for Mr. Bailey's § 1983 claims, because a § 1983 claim may not, as a matter of law, be founded on a *Miranda* violation, and the mere risk of a loss of liberty is insufficient to establish seizure of the person. We also reverse the circuit court's denial of Petitioners' motion to dismiss Mr. Bailey's malicious prosecution claim. Mr. Bailey's complaint fails to allege sufficient facts to meet the heightened pleading standard to

overcome Petitioners' qualified immunity, and the circuit court failed to address whether Mr. Lyle was acting within the scope of his employment—an analysis necessary to determine whether MFCU may be entitled to qualified immunity from vicarious liability for Mr. Lyle's alleged malicious prosecution. Accordingly, we remand for additional proceedings related to Mr. Bailey's malicious prosecution claim consistent with this opinion. Finally, we affirm the circuit court's determination that Petitioners are not entitled to absolute prosecutorial immunity.

No. 22-779, writ granted.

No. 22-781, affirmed in part, reversed in part, and remanded.